## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GLACEAU VITAMINWATER MARKETING AND SALES PRACTICE LITIGATION (NO. II) | Case No. 1:11-md-02215-DLI-RML<br><br>Judge Dora Lizette Irizarry<br>Mag. Judge Robert M. Levy<br><br>June 29, 2012 |
| BATSHEVA ACKERMAN, RUSLAN ANTONOV, JAMES KOH, JERRAD PELKEY, JACK PETTY, and PHYLLIS VALENTINE, individually and on behalf of those similarly situated,<br><br>                 Plaintiffs,<br><br>   vs.<br><br>THE COCA COLA COMPANY and ENERGY BRANDS INC.<br>(d/b/a GLACEAU),<br><br>                Defendants. | Case No. 1:09-cv-0395-DLI-RML<br><br>Judge Dora Lizette Irizarry<br>Mag. Judge Robert M. Levy<br><br>June 29, 2012 |
| JULIANA FORD, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>THE COCA-COLA COMPANY, a Georgia Corporation; ENERGY BRANDS, a New York Corporation; and DOES 1 through 100, inclusive,<br><br>               Defendants. | Case No. 1:11-cv-2355-DLI-RML<br><br>Judge Dora Lizette Irizarry<br>Mag. Judge Robert M. Levy<br><br>June 29, 2012 |

## MASTER MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  THE COMMON FACTS UNDERLYING PLAINTIFFS' CLAIMS .................................... 2

III. THE PROPOSED CLASSES ........................................................................................... 7

IV.  ARGUMENT ................................................................................................................ 8

   A.   General Legal Standards Governing Class Certification ................................ 8

   B.   The Proposed Classes Satisfy the Requirements of Rule 23(a) ........................ 10

      1.   The Classes Are so Numerous that Joinder of All Members is Impracticable. ........... 10

      2.   There Are Questions of Law and Fact Common to the Classes. ................................. 11

      3.   The Claims of the Representative Parties Are Typical of the Claims of the Classes. .. 13

      4.   The Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Classes. 14

   C.   The Requirements for Certification Under Rule 23(b)(2) Are Satisfied ......................... 15

   D.   Common Questions of Law and Fact Predominate over Individual Questions ............... 16

      1.   Common Issues Predominate on the UCL and FAL Claims. ..................................... 17

      2.   Common Issues Predominate on the CLRA Claim ................................................... 20

      3.   Common Issues Predominate on the GBL Claims .................................................... 23

      4.   Common Issues Predominate on the Unjust Enrichment Claims Under California and
           New York Law ...................................................................................................... 26

   E.   A Class Action Is Superior to Any Other Means of Resolving Plaintiffs' Claims ........... 27

V.   CONCLUSION ............................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. The Coca Cola Company*,
    No. CV-09-0395, 2010 WL 29225955 (E.D.N.Y. Jul. 21, 2010)..........................................12

*Amchem Prods, Inc. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997)..............................................................................15, 23

*Becher v. Long Island Lighting Co.*,
    164 F.R.D. 144 (E.D.N.Y. 1996)........................................................................................18

*Broder v. MBNA Corp.*,
    281 A.D.2d 369, 722 N.Y.S.2d 524 (N.Y.A.D. 1 Dept. 2001)..............................................30

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)........................................................................................15, 16

*Cartwright v. Viking Indus.*,
    No. 2:07-CV-02159, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ....................................26

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) ........................................................................................25

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)..........................................................................25, 26, 27

*Consolidated Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..............................................................................................17

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) ..................................................................................................25

*Cortigiano v. Oceanview Manor Home For Adults*,
    227 F.R.D. 194 (E.D.N.Y. 2005)..........................................................................16, 19, 20

*Cromer Finance Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) ......................................................................................34

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008)..............................................................................7, 16, 17, 19

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ........................................................................................34

*Eisen v. Carlisle & Jacqueline*,
    417 U.S. 156, 94 S. Ct. 2140 (1974)..................................................................16

*Fitzpatrick v. General Mills, Inc.*,
    263 F.R.D. 687 (S.D. Fla. 2010), *vacated on other grounds*, 635 F.3d 1279 (11th Cir.
    2011) ................................................................................................................31

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147, 102 S. Ct. 2364 (1982)..............................................................19

*Goldstein v. North Jersey Trust Co.*,
    39 F.R.D. 363 (S.D.N.Y. 1966) .......................................................................16

*Guido v. L'Oreal, USA, Inc.*,
    Nos. CV 11-1067, CV 11-5465, 2012 WL 1616912 (C.D. Cal. May 7, 2012)......................30

*Gulf Oil Co. v. Barnard*,
    452 U.S. 89, 101 S. Ct. 2193 (1981)............................................................14, 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................................35

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
    574 F.3d 29 (2d Cir. 2009)...............................................................................20

*In re Initial Public Offerings Secs. Litig.*,
    471 F.3d 24 (2d Cir. 2006)...............................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
    172 F.R.D. 119 (S.D.N.Y. 1997) .....................................................................19

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006).................................................................15, 18, 22

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..........................................................17, 19

*In re The Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) .......................................................................35

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .....................................................................23, 24, 26, 27

*In re Visa Check/Master Money Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ............................................................................32

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012).................................................................16, 17

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................19

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ................................................. *passim*

*Johns v. Bayer Corp.*
   280 F.R.D. 551 (S.D. Cal. Feb. 3, 2012) ......................................27, 28

*Johnson v. Gen. Mills, Inc.*,
   275 F.R.D. 282 (C.D. Cal. 2011) ..........................................................29

*Johnson v. Gen. Mills, Inc.*,
   276 F.R.D. 519 (C.D. Cal. 2011) ..........................................................29

*Kennedy v. Jackson Nat'l Life Ins. Co.*,
   No. C07-0371, 2010 WL 4123994 (N.D. Cal. Oct. 6, 2010)..................25

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .............................................................33

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).................................................................19

*Mass. Mut. Life Ins. Co. v. Superior Ct.*,
   97 Cal. App. 4th 1282 (2002) .......................................................24, 27, 29

*Menagerie Productions v. Citysearch*,
   No. CV 08-4263, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009).............25

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ...........................................................................29

*Monaco v. Stone*,
   187 F.R.D. 50 (E.D.N.Y. 1999) .............................................................17

*Morrissey v. Nextel Partners, Inc.*,
   72 A.D.3d 209, 895 N.Y.S. 2d 580 (N.Y.A.D. 3 Dept. 2010)................30

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)..................................................................15

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) .............................................................17

*Pub. Employees' Ret. Sys. of Mississippi v. Merril Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) .............................................................17

*Ramos v. SimplexGrinnell LP*,
   796 F. Supp. 2d 346 (E.D.N.Y. 2011) ...........................................................................17, 18

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...........................................................................................16, 17

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)...................................................................................................19

*Seekamp v. It's Huge, Inc.*,
   No. 1:09-CV-00018, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) .........................................7

*Shum v. Intel Corp.*,
   630 F. Supp. 2d 1063 (N.D. Cal. 2009) ................................................................................32

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011), *cert. denied,* 132 S. Ct. 1970 (2012)..............................24, 26

*Stinson v. City of New York*,
   No. 10 Civ. 4228, 2012 WL 1450553 (S.D.N.Y. Apr. 23, 2012) ...........................................22

*Taylor v. American Bankers Ins. Group*,
   267 A.D.2d 178, 700 N.Y.S.2d 458 (N.Y.A.D. 1 Dept. 1999)................................................31

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008)...................................................................................................15

*United States v. City of New York*,
   276 F.R.D. 22 (E.D.N.Y. 2011) ...................................................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..............................................................................................16, 17, 22

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) ..............................................................................................25

*Yamada v. Nobel Biomedical Holding AG*,
   275 F.R.D. 573 (C.D. Cal. 2011)...........................................................................................25

*Zeisel v. Diamond Foods, Inc.*,
   No. C 10–01192, 2011 WL 2221113 (N.D. Cal. June 7, 2011) .............................................24

**STATUTES, RULES & REGULATIONS**

Code of Federal Regulations
21 C.F.R. § 104.20 .........................................................................................13

Federal Rules of Civil Procedure
Rule 23 ..................................................................................................... *passim*

Cal. Bus. & Prof. Code
§17200.........................................................................................................23
§17203.........................................................................................................26
§§ 17500 *et seq.* ...................................................................................23, 25

Cal. Civ. Code
§§1750 *et seq.* ......................................................................................25, 26
§1770(a)(7) ...............................................................................................28
§1780(a) ....................................................................................................29

Cal. Health & Saf. Code
§109875 *et seq.* ...........................................................................................25

New York General Business Law
§349..................................................................................................... *passim*
§350.............................................................................................29, 30, 31, 32

**OTHER AUTHORITIES**

Herbert B. Newberg, NEWBERG ON CLASS ACTIONS: A MANUAL FOR GROUP LITIGATION
AT FEDERAL AND STATE LEVELS §3.12, at n. 8 (5th ed. 2012)................................17

Herbert Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS §4.3, at 4-125 (3d ed.
1992) ............................................................................................................29

# I.    INTRODUCTION

Plaintiffs Batsheva Ackerman, Ruslan Antonov, Nicholas Armada, Juliana Ford, Ahmed Khaleel, James Koh, Juan Squiabro, and David Volz, by their counsel, respectfully submit this Master Memorandum of Law in support of their Motion for Class Certification pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek certification of six statewide classes of consumers who have been damaged by deceptive labeling and marketing of vitaminwater by Defendants The Coca Cola Company ("Coca Cola") and Energy Brands Inc. (d/b/a Glaceau) (collectively, "Defendants") in violation of California, Florida, Illinois, New York, Ohio and Virgin Islands consumer protection and common law.[1]

Federal courts have repeatedly recognized that claims such as those asserted by Plaintiffs here challenging deceptive business practices and false advertising are appropriate for class action treatment under Rule 23 of the Federal Rules of Civil Procedure.[2]  The central issue in the

---

[1] There are six actions pending before this Court pursuant to the transfer order of the Judicial Panel for Multidistrict Litigation:  (i) *Ackerman v. The Coca Cola Company, et al.*, Case No. 09-cv-0395 (E.D.N.Y.), which asserts claims under California and New York law on behalf of separate classes of California and New York consumers; (ii) *Armada v. The Coca Cola Company, et al.*, Case No. 10-cv-61621 (S.D. Fla.), which asserts claims under Florida law on behalf of a class of Florida consumers; (iii) *Khaleel v. The Coca Cola Company, et al.*, Case No. 10CH53205 (Ill. Circuit Court), which asserts claims under Illinois law on behalf of a class of Illinois consumers; (iv) *Volz. v. The Coca Cola Company, et al.*, Case No. 10-cv-879 (Ohio Court of Common Pleas), which asserts claims under Ohio law on behalf of a class of Ohio consumers; (v) *Squiabro v. The Coca Cola Company, et al.*, Case No. 3:10-cv-118 (Dist. Ct of the V.I.), which asserts claims under Virgin Islands law on behalf of a class of Virgin Islands consumers; and (vi) *Ford v. The Coca Cola Company, et al.*, Case No. 11-1843 (N.D. Cal.), which asserts claims under California law on behalf of California consumers.  This Master Memorandum of Law in Support of Plaintiffs' Motion for Class Certification sets forth the common facts supporting class certification in all six actions, the standards governing certification under Fed. R. Civ. P. 23, and how those standards are satisfied with respect to the claims arising under California and New York law. Supplemental briefs demonstrating why class certification is appropriate with respect to the claims arising under Florida, Illinois, Ohio and Virgin Islands law will be filed separately in accordance with the briefing schedule set by the Court.

[2] *See, e.g., Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008).

six actions brought by Plaintiffs is whether Defendants' uniform labeling of vitaminwater products – including the name "vitaminwater" – is deceptive to a reasonable consumer.  The answer to this question is the same for all Class members.  The labeling is either deceptive or it is not, and since deception is determined by an objective, reasonable consumer standard, common evidence will establish this fact.  The predominance requirement of Rule 23 of the Federal Rules of Civil Procedure is therefore satisfied in these cases.  Moreover, certification under Rule 23(b)(2) is also appropriate as Defendants have "acted or refused to act on grounds that apply generally to the [C]lass[es], so that final injunctive relief or corresponding declaratory relief is appropriate respecting the [C]lass[es] as a whole."  Thus, these six actions easily meet the requirements for class certification under Rule 23.

## II.    THE COMMON FACTS UNDERLYING PLAINTIFFS' CLAIMS[3]

Defendants deceptively promote vitaminwater as an alternative beverage to water and soft drinks that will assist consumers in maintaining healthy dietary practices.  The product name (vitaminwater), description (Nutrient Enhanced Water Beverage), and slogans such as "vitamins+water=all you need" and "vitamins+water=what's in your hand" that appear on all vitaminwater labels,[4] together with flavor names that are associated with specific purported

---

[3] All references to "Ex.___" herein are to exhibits to the Declaration of Deborah Clark-Weintraub In Support of Plaintiffs' Motion for Class Certification filed herewith.  Unless otherwise indicated, all internal citations are omitted and emphasis is added.

[4] The name vitaminwater appeared on the label of every vitaminwater product sold to consumers during the relevant Class Periods as did the description of vitaminwater as a "Nutrient Enhanced Water Beverage" and the phrase "vitamins+water=all you need."  *See* Stipulation of Certain Marketing Statements dated February 17, 2012, Ex. B.  The phrase "vitamins+water=what's in your hand" appeared on vitaminwater product labels until 2004.  *Id.*

health benefits,[5] mislead consumers to believe that vitaminwater is simply water fortified with nutrients that will provide certain stated health benefits rather than just another sugary soft drink.

The testimony of Plaintiffs is illustrative in this regard.  For example, when asked by defense counsel to explain what was deceptive about the labels on vitaminwater products, Plaintiff Batsheva Ackerman replied, "[i]t is the name, 'VitaminWater, nutrient enhanced water beverage.' . . .  [I]t is saying it is just, you know, vitamins, it is water and vitamins.  It is *not* water and vitamins."[6]  Ms. Ackerman also pointed to the slogan "vitamins plus water equals all you need," stating that this phrase makes "it seem[] like there is vitamins and water."[7]  Plaintiff Ruslan Antonov testified that he was also deceived by the vitaminwater name, stating "it's water and vitamins, and it says something like it's all you need . . . I buy it as a simple product[,] . . . water with vitamins."[8]   Plaintiff Julianna Ford also testified that she considered the name misleading, telling defense counsel:

> [T]he bottle sitting right there it says, "Nutrient enhanced beverage." [I]t seems as though it's vitamins in water. . . .  I think when it says, "Nutrient enhanced beverage," you think that it's nutritional because of the word "Nutrient." . . .  [I]t doesn't say "Nutrient enhanced beverage . . . with sugar," so that you would . . . think about the sugar contents.  It's just – you just think it's vitamins and water, and it's nutritional.[9]

---

[5] *Ackerman* Second Amended Class Action Complaint ("SAC"), Oct. 6, 2010, ECF No. 32 at ¶¶27-28.

[6] Deposition of Batsheva Ackerman, Ex. C at 84:24-85:4.

[7] *Id.*, at 86:2-3.

[8] Deposition of Ruslan Antonov, Ex. D at 19:18-21.

[9] Deposition of Juliana Ford, Ex. E at 37:2-40, 40:24-41:8.

Likewise, Plaintiff James Koh testified that "based on the label it seemed like it was—it just had vitamins and water."[10]   The name vitaminwater similarly misled the other named Plaintiffs to believe that vitaminwater contains nothing but vitamins and water.[11]

Each of the Plaintiffs also testified that as a result of the deceptive labeling, they viewed vitaminwater as a beverage that would assist them in maintaining healthy dietary practices.  For example, Plaintiff Ackerman testified that when she was purchasing vitaminwater she was doing so because she believed it was a healthier choice.[12]   Plaintiff Volz likewise testified that he viewed vitaminwater as "a healthy alternative to some of those other drinks."[13]   Similarly, Plaintiff Nicholas Armada testified that the name vitaminwater led him to believe that the product "was going to be beneficial for me, so I was getting a perk I guess by drinking water with vitamins as opposed to just drinking tap water."[14]

---

[10] Deposition of James Koh, Ex. F at 27:13-14.

[11] *See*, *e.g.*, Deposition of Nicholas Armada, Ex. G at 18:4 (testifying that he thought vitaminwater was "water with vitamins in it."); *id.*, at 62:6-13 ("Q.  What is the specific misrepresentation?  A.  That you have a giant text that says Vitaminwater, and anybody that sees that is going to assume that that's exactly what they are getting, and for the most part just that. . . .  It's *not* just Vitaminwater."); Deposition of Ahmed Khaleel, Ex. H at 22:22-23:6 ("I believed I was buying water with vitamins and those were the two ingredients I was purchasing namely.  I feel as though it was advertised as a substitute for water.  Q.  Why do you think it was advertised as a substitute for water?  A.  Because the name of it is Vitaminwater.  So it's not vitamin sugar water.  It's not anything else."); Deposition of David Volz, Ex. I at 35:6-9 ("[W]hen you see Vitaminwater, did you think there were specific vitamins in this product?  A.  Yes, vitamins and water."), *id.*, at 72:25, 72:20 (testifying that vitaminwater name "is definitely misleading" and should be changed to "Vitaminwater plus sugar . . . or sugar water").

[12] Ex. C at 10:2-7.

[13] Ex. I at 120:13-16 ("My original thought . . . , that it was vitamins plus water, a healthy alternative to some of those other drinks ."), *id.*, at 121:14-20 ("[T]he word Vitaminwater was depicted to me and the way I looked at it was something that was a healthy drink without a lot of sugars . . . .  It was vitamins plus water with nutrients, which I would assume . . . would be the vitamins.").

[14] Ex. G at 23:24-24:2.

All of the Plaintiffs testified that they were surprised when they learned of vitaminwater's substantial sugar content given its labeling. Plaintiff Ackerman, who had purchased vitaminwater not only for herself but for her young children as well, testified "I was upset. I was surprised to see how much sugar" was in the product.[15] Plaintiff Koh was similarly taken aback when he read the label, stating "[y]ou know, I actually had no idea that it had that much sugar, actually."[16] Plaintiff Antonov was also surprised, telling defense counsel that vitaminwater "might as well be a can of Coke without carbonation, for how much sugar it has in there."[17] Plaintiff Ahmed Khaleel felt the same way, stating "[e]ssentially, I purchased a soft drink."[18] Most of the Plaintiffs testified that they no longer purchase vitaminwater because of its high sugar content.[19]

The testimony of Defendants' corporate representatives demonstrates that Defendants deceptively marketed and advertised vitaminwater as a fortified drink in an effort to attract health-conscious consumers.[20] Carol Dollard, Head Of Product Development for Energy Brands, Inc., explained that the phrase "Nutrient Enhanced Water Beverage" was intended to convey to

---

[15] Ex. C at 66:9-10.

[16] Ex. F at 27:11-12; *see also* Ex. I at 40:10-12 ("Q. Now, when you bought the product, you didn't think it had sugar? A. No, I did not.").

[17] Ex. D at 19:23-24.

[18] Ex. H at 20:25-21:1.

[19] *See*, *e.g.*, Ex. G at 16:12-23 (testifying that he stopped drinking vitaminwater when he found out how much sugar it contained); Ex. H at 14:16-22 (same); Deposition of Juan Squiabro, Ex. J at 14:4-21 (same); Ex. I at 113:3-6 (same).

[20] *Ackerman* SAC at ¶¶23-24.

consumers that vitaminwater contains vitamins,[21] not sugar. Despite the strong emphasis on water and vitamins, Dollard confirmed that vitaminwater actually contains significantly more sugar than vitamins.[22] Likewise, Eric Beniker, the brand manager for vitaminwater from 2004 to 2005, admitted that vitaminwater's sales strategy was to shelf the product line in the water aisle,[23] thus lending a halo of healthfulness to vitaminwater while differentiating it from soda and juice beverages. In addition, the research conducted by Defendants' purported "historical" expert, Stephen Swisdak, confirmed that vitaminwater's labeling and marketing is deceptive.[24]

In fact, however, as Plaintiff Antonov observed, vitaminwater is essentially Coke without the carbonation, and Defendants' deceptive labeling violates federal law. Specifically, as this Court found in denying Defendants' motion to dismiss:

> FDA regulations do not permit a health claim, or any nutrient content claim involving the word "healthy," (or any derivative) to be made about a food unless it contains, in the quantity customarily consumed at one sitting, at least 10 percent of the recommended daily reference quantity of vitamin A, vitamin C, calcium, iron, protein or fiber.[25]

---

[21] Deposition of Carol Dollard, Ex. K at 56:17-20 ("Q. [B]y 'nutrient enhanced' is vitaminwater trying to convey it has sugar or is it trying to convey it has vitamins in it? A. The nutrients refer primarily to the vitamins.").

[22] *Id.* at 41:2-10 ("Q. [vitaminwater] has more sugar than it has vitamins by a significant factor, is that correct? A. That's correct. But you need to keep in mind that the daily value for some vitamins are not measured in grams, they're measured in micrograms and milligrams.").

[23] Deposition of Eric Beniker, Ex. L at 88:2-8.

[24] *See, e.g.,* Deposition of Stephen Swisdak, Ex. M at 94:13-96:5 (discussing article describing vitaminwater's sugar content as a "*hidden trap*"); 98:12-99:14 (discussing *Today Show* segment warning that vitaminwater product name fools consumers); 104:5-06:13 (discussing book characterizing vitaminwater as a "swindle"); 122:10-123:10 (discussing local news segment describing vitaminwater as a "scam").

[25] *Ackerman v. The Coca Cola Company*, No. CV-09-0395, 2010 WL 29225955, at *9 (E.D.N.Y. Jul. 21, 2010).

Moreover, as this Court instructed, such fortification is permissible "only if the addition of nutrients would be consistent with the FDA's fortification policy for foods set forth in 21 C.F.R. § 104.20, which bars the 'indiscriminate addition of nutrients to foods.'"[26]  These regulations "colloquially termed 'the jelly bean rule,'" are intended to prevent the conduct that occurred here – "food producers . . . encouraging the consumption of 'junk foods' by fortifying them with nutrients."[27]  Notwithstanding these explicit regulations, Defendants included numerous health and nutrient content claims on vitaminwater labels in order to mislead consumers to believe that drinking vitaminwater would assist them in maintaining healthy dietary practices.

### III.    THE PROPOSED CLASSES

As set forth in the relevant complaints, Plaintiffs seek certification of the following statewide Classes:

**The California Class**:  All California residents who purchased vitaminwater at any time from January 15, 2005 to present.  Excluded from the California Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

Plaintiffs Ruslan Antonov, James Koh, and Juliana Ford are the proposed Class representatives for the California Class.

**The New York Class**:  All New York residents who purchased vitaminwater at any time from January 20, 2003 to present.  Excluded from the New York Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

Plaintiff Batsheva Ackerman is the proposed Class representative of the New York Class.

---

[26] *Id.*

[27] *Id.*

> **The Ohio Class**:  All consumers who purchased vitaminwater in the State of Ohio between June 7, 2007 and the present.  Excluded from the Ohio Class are the Defendants, and the subsidiaries, parents, affiliates, or controlled persons or entities of Defendants, as well as their officers and directors and their family members, and their employees, or representatives.

Plaintiff David Volz is the proposed Class representative of the Ohio Class.

> **The Illinois Class**:  All Illinois residents who purchased vitaminwater at any time from December 2007 to the present.  Excluded from the Illinois Class are Defendants, any entity in which any Defendant has a controlling interest, and any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

Plaintiff Ahmed Khaleel is the proposed Class representative of the Illinois Class.

> **The Florida Class**:  All Florida residents who purchased vitaminwater at any time during the applicable statute of limitations.  Excluded from the Florida Class are Defendants, any entity in which any Defendant has a controlling interest, and any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

Plaintiff Nicholas Armada is the proposed Class representative of the Florida Class.

> **The Virgin Islands Class**:  All residents of the United States Virgin Islands who purchased vitaminwater since its distribution in the Virgin Islands.

Plaintiff Juan Squiabro is the proposed Class representative of the Virgin Islands Class.

## IV.   ARGUMENT

### A.   General Legal Standards Governing Class Certification

The Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice."[28]  To maintain a suit as a class action under Rule 23, Plaintiffs must allege facts establishing each of the following four threshold requirements of subsection (a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

[28] *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99, 101 S. Ct. 2193 (1981).

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[29]

In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiffs seeking certification of claims for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) must also demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[30]  Plaintiffs seeking monetary relief, on the other hand, must satisfy the prerequisites of both subsection (a) and (b)(3) of Rule 23 by demonstrating that questions of law or fact common to the members of the proposed class "predominate over any questions affecting only individual members," and that a class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy."[31]

Whether seeking certification under Rule 23(b)(2) or 23(b)(3), a plaintiff bears the initial burden of advancing reasons why a putative class action meets Rule 23 requirements.[32]  Once a plaintiff has made a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise.[33]

---

[29] Fed. R. Civ. P. 23(a)(1)-(4).

[30] Fed. R. Civ. P. 23(b)(2).

[31] Fed. R. Civ. P. 23(b)(3); *see e.g.*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231 (1997); *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006).

[32] Fed. R. Civ. P. 23.

[33] *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Amchem Prods.*, 521 U.S. at 614); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008).

The determinations required by Rule 23 are questions addressed to the sound discretion of the district court.[34]  In determining whether to maintain an action as a class action, courts do not conduct an exploration of the merits regarding aspects of the claims unrelated to a Rule 23 requirement.[35]  Moreover, because a court decides whether certification of a class is appropriate at the pleading stage of the action, the court accepts substantive allegations in the complaint as true for purposes of the class motion.[36]

**B.    The Proposed Classes Satisfy the Requirements of Rule 23(a)**

**1.    The Classes Are so Numerous that Joinder of All Members is Impracticable.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable."[37]  "Impracticability means difficulty or inconvenience of joinder [not] . . . impossibility of joinder."[38]  Courts conduct a 'case-by-case analysis of the facts' and determine practicability based upon all circumstances surrounding the case.[39]  Relevant factors in this analysis include "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual

---

[34] *Gulf Oil Co.*, 452 U.S. at 100.

[35] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-78, 94 S. Ct. 2140 (1974); *In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

[36] *See Eisen*, 417 U.S. at 177; *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194 (E.D.N.Y. 2005).

[37] Fed. R. Civ. P. 23(a); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012); *United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011); *Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010).

[38] *Dupler*, 249 F.R.D. at 36 (citing *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999)); *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993); *Goldstein v. North Jersey Trust Co.*, 39 F.R.D. 363, 367 (S.D.N.Y. 1966) (finding that impracticable does not mean "incapable of being performed" or "infeasible.").

[39] *Vitamin C*, 279 F.R.D. at 99 (citing *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980)).

suits."[40]  Plaintiffs need not show evidence of exact class size or identity of class members in order to satisfy Rule 23's numerosity requirement.[41]

Within the Second Circuit, courts presume joinder of all putative class members to be impracticable if the class has more than forty members.[42]  Moreover, "Plaintiffs need not establish the precise number of potential class members since courts are empowered to 'make "common sense assumptions" to support a finding of numerosity.'"[43]

Numerosity is indisputable here.  The proposed Classes consist of thousands of individuals who were subjected to Defendants' deceptive labeling and marketing of vitaminwater.  Thus, the numerosity requirement is clearly satisfied.

### 2.   There Are Questions of Law and Fact Common to the Classes.

Rule 23(a)(2) requires that the proposed Classes share a common question of law or fact, and will be satisfied by a single common issue of law.[44]  There is a common issue of law if plaintiffs "'identify some unifying thread among the members' claims . . . ,'"[45] and a common issue of law may exist even though there is "some factual variation among class members' specific grievances."[46]  Moreover, "'Rule 23(a)(2) requires only that questions of law or fact be

---

[40] *Pub. Employees' Ret. Sys. of Mississippi v. Merril Lynch & Co., Inc.*, 277 F.R.D. 97 (S.D.N.Y. 2011) *(citing  Robidoux*, 987 F.2d at 936).

[41] *Robidoux*, 987 F.2d 931; *see also* Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* §3.12, at n. 8 (5th ed. 2012).

[42] *Vitamin C*, 279 F.R.D. at 99; *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 353 (E.D.N.Y. 2011); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

[43] *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001).

[44] *Wal-Mart*, 131 S. Ct. at 2556 ("[F]or purposes of Rule 23(a)(2) 'even a single common question will do.'"); *Dupler*, 249 F.R.D. at 37; *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).

[45] *Monaco*, 187 F.R.D. at 61.

[46] *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998).

shared by the prospective class.  It does not require that *all* questions of law or fact raised be common.'"[47]  To determine whether Rule 23(a)(2) is satisfied, courts consider "(1) whether the class members' claims 'will in fact depend on the answers to common questions,' and (2) whether classwide proceedings have the capacity to 'generate common answers apt to drive the resolution of the litigation.'"[48]

Here, Plaintiffs' allegations present not one, but a number of common questions including, but not limited to:

- Whether Defendants marketed, advertised, labeled and sold vitaminwater using false, misleading, and/or deceptive statements;

- Whether Defendants omitted and/or misrepresented material facts in connection with the marketing, advertising, labeling, and sale of vitaminwater;

- Whether Defendants' marketing, advertising, labeling, and selling of vitaminwater constitutes an unfair, unlawful, or fraudulent business practice;

- Whether Defendants' marketing, advertising, labeling, and selling of vitaminwater constitutes a deceptive business practice; and

- Whether Defendants' marketing, advertising, and labeling of vitaminwater constitutes false advertising.

Accordingly, Plaintiffs have satisfied the commonality requirement.

---

[47] *Ramos*, 796 F. Supp. 2d 346; *see Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D.N.Y. 1996).

[48] *United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2551; *see also Nassau County*, 461 F.3d at 227 ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.").

### 3. The Claims of the Representative Parties Are Typical of the Claims of the Classes.

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class."[49]  In order to meet this typicality requirement, a plaintiff must show that "the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members."[50]  Typicality is met when "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[51]  It is enough that "the other members of the class have the same or similar claims, the action is not based on conduct special or unique to the named plaintiffs, and the class members have been aggrieved by the same course of conduct.  The fact that there may be slight variations in how defendants treated different plaintiffs (or putative class members) does not render the claims atypical."[52]  The Second Circuit has held that "'[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'"[53]

---

[49] Fed. R. Civ. P. 23(a)(3).

[50] *Playmobil*, 35 F. Supp. 2d at 241; *Cortigiano*, 227 F.R.D. at 205 (finding that a named plaintiff's claim is "typical" where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001).

[51] *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364 (1982); *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997).

[52] *Cortigiano*, 227 F.R.D. at 206 (citing *Robidoux*, 987 F.2d at 937).

[53] *Dupler*, 249 F.R.D. at 40 (citing *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007); *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126-27 (S.D.N.Y. 1997).

In short, "[t]hat all members of the class would benefit from the named plaintiffs' action demonstrates that the typicality requirement is met."[54]

In these cases, Plaintiffs allege a common pattern of wrongdoing – Defendants' deceptive labeling and marketing of vitaminwater – and will present the same evidence (based on the same legal theories) to support both their claims and the claims of the members of the Classes. Similarly, each Plaintiff and Class member seeks the same relief – an injunction putting an end to Defendants' deception of consumers – and the monetary relief as provided under the various states' laws.  Accordingly, Rule 23(a)(3) is satisfied.

### 4.    The Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Classes.

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."[55]  Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.[56]  This case easily meets both prerequisites of adequacy of representation.

First, Plaintiffs have retained counsel highly experienced in class action litigation to prosecute their claims and those of the Classes.[57]  Second, there is nothing to suggest that any of the Plaintiffs have any interest antagonistic to the vigorous pursuit of the Classes' claims against

---

[54] *Cortigiano*, 227 F.R.D. at 206.

[55] Fed. R. Civ. P. 23(a)(4).

[56] Notably, however, in order to defeat a motion for certification, the conflict "must be fundamental."  *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29 (2d Cir. 2009).

[57] *See generally* Declaration of Deborah Clark-Weintraub in Support of Plaintiffs' Motion for Class Certification; Declaration of Stephen Gardner in Support of Plaintiffs' for Class Certification; Declaration of Michael R. Reese in Support of Plaintiffs' Motion for Class Certification.

Defendants.  To the contrary, each class member's claims arise under the same legal theories, each class member was harmed in the same way, and each class member seeks the same recovery as the representative Plaintiff for his/her class, so the Plaintiffs' interests align perfectly with the interests of the absent class members they seek to represent.  Accordingly, Plaintiffs adequately represent the interests of the Class.

## C.     The Requirements for Certification Under Rule 23(b)(2) Are Satisfied

These actions qualify as class actions under Rule 23(b)(2) because Defendants' deceptive marketing of vitaminwater is an action of general applicability to all members of the Classes "so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole."[58]  In *Jermyn v. Best Buy Stores, Inc.*,[59] Judge McMahon certified a similar class seeking injunctive relief under New York General Business Law (GBL) §349 reasoning that:

> If plaintiff's allegations are true, there is overwhelming positive value to the injunctive relief that the class seeks. Such an injunction would prevent Best Buy from continuing to perpetrate its alleged deceptive Anti-Price Matching Policy on all New York consumers in violation of New York law. The state of New York placed a high value on this type of injunctive relief; indeed, section 349 expressly provides for it: "Any person who has been injured by reason of any violation of this section may bring an action in his own name *to enjoin such unlawful act or practice* ...." N.Y. Gen. Bus. Law § 349(b) (emphasis added).
>
> In addition, the availability of injunctive relief in this case gives a plaintiff the type of incentive needed to bring this action. Here, Jermyn complains that he lost $180.00 based on Best Buy's application of its secret Anti-Price Matching Policy. Such damages are insufficient to incent a plaintiff to bring suit; they are exceeded by the filing fee. However, a reasonable plaintiff aggrieved by Best Buy's policy would want to prevent Best Buy from committing wrongful acts in the future. Accordingly, the class meets the requirements of Rule 23(b)(2).[60]

---

[58] Fed. R. Civ. P. 23(b)(2).

[59] 256 F.R.D. 418 (S.D.N.Y. 2009).

[60] *Id.* at 434.

Judge McMahon's reasoning in *Jermyn* is equally applicable here and supports certification of the California and New York Classes under Fed. R. Civ. P. 23(b)(2).  As was the case in *Jermyn*, class certification under Fed. R. Civ. P. 23(b)(2) is particularly appropriate here since individual damages are small and are not the motivating factor behind this litigation.[61]  In this regard, when asked what she was seeking to accomplish through her lawsuit, Plaintiff Ackerman responded that her primary objective was to change the labels on vitaminwater.[62]

Although the Supreme Court in *Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011), reversed certification of a class under Fed. R. Civ. P. 23(b)(2) where class members were seeking both injunctive and monetary relief, decisions issued by courts in the Second Circuit since *Dukes* was decided recognize that when a district court engages in the analysis required under Rule 23(b)(2) and Rule 23(b) (3), a class can be certified seeking both declaratory and injunctive relief as well as money damages.[63]  In this case, both the UCL and GBL afford both injunctive and monetary relief.  Accordingly, *Dukes* is no bar to class certification under Fed. R. Civ. P. 23(b)(2) in this case.

**D.    Common Questions of Law and Fact Predominate over Individual Questions**

Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,"[64] and "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of

---

[61] *See Stinson v. City of New York*, No. 10 Civ. 4228, 2012 WL 1450553, at *21 (S.D.N.Y. Apr. 23, 2012).

[62] Ex. C at 15:2-17.

[63] *See Stinson*, 2012 WL 1450553, at *21; *see also Jermyn*, 276 F.R.D. at 173-74.

[64] *United States v. City of New York*, 276 F.R.D. at 30; *Nassau County*, 461 F.3d at 225.

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[65]   In determining whether the class is a "sufficiently cohesive" unit, all factual or legal issues that are common to the class inform the court's analysis.[66]   An issue that is common to the class is one that is susceptible to generalized, class-wide proof.[67]   Plaintiffs easily meet this standard for their claims for violation of California and New York consumer protection law and unjust enrichment.

   1.   **Common Issues Predominate on the UCL and FAL Claims.**

With respect to the Plaintiff's claims under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"),[68] individualized issues will not outweigh common issues because Class members do not need to individually show they have lost money or property as a result of deception.[69]   "To state a claim under either the UCL or [FAL], based on advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived."[70]   Relief under the UCL "is available without individualized proof of

---

[65] Fed. R. Civ. P. 23(b)(3).

[66] *Amchem Prods., Inc.*, 521 U.S. at 621.

[67] *United States v. City of New York*, 276 F.R.D. at 28.

[68] The Unfair Competition Law (UCL) and False Advertising Law (FAL) are codified at §§17200 *et seq.* and 17500 *et seq.* of California's Business & Professions Code, respectively.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and any unfair deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." Cal. Bus. & Prof. Code §17200.

[69] *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("[O]nce the named plaintiff meets [the standing] burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members.").

[70] *Tobacco II*, 46 Cal. 4th at 312.

deception, reliance and injury."[71]   Plaintiffs simply must show that the material facts at issue

were "an immediate cause of the injury-producing conduct" – and only the named Plaintiffs must

make this showing.[72]   Moreover, "the plaintiff is not required to allege that those

misrepresentations were the sole or even decisive cause of the injury-producing conduct."[73]

Consistent with their allegations, Plaintiff Antonov, Plaintiff Koh, and Plaintiff Ford

testified that they relied on the name of Defendants' product – "vitaminwater" – that was on the

label (which all Class members viewed).[74]   Where, as here, the named plaintiffs have alleged

economic injury traceable to the alleged violation of the UCL sufficient to raise an inference of

causation, common issues of fact and law predominate with respect to plaintiffs' UCL and FAL

claims.[75]   Courts have consistently certified similar types of claims based on *Tobacco II's*

finding that classwide relief is available without an individual showing of reliance for the absent

---

[71] *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *cert. denied,* 132 S. Ct. 1970 (2012) (quoting *Tobacco II*, 46 Cal. 4th at 320) (finding the District Court erred in finding predominance requirement was not met on UCL claim)

[72] *Tobacco II*, 46 Cal. 4th at 326

[73] *Id.* at 328.

[74] *See, e.g.*, Ex. D at 26:13-21 (Viewing the front label of the product, "'Vitaminwater' is really what stood out for me. . . . It says water with vitamins. It's that simple. And the way it was described is [sic] vitamin C. And I'm like, well, that's great. That sounds like a healthy beverage. . . . So I bought it as a water with vitamins, enhanced with nutrients."); Ex. F at 6:15-18 ("[T]he main thing is when I walked into the store, it's displayed, you know, at eye level, and I just noticed it, because of the bold print, 'VitaminWater.'"); *id.*, at 27:13-19 ("Just based on the label it seemed like it was – it just had vitamins and water, that I would need on a daily basis, you know. Actually, I think it did say all you need – actually, vitamins plus water, all you need, on it. That was another thing that caught my eye."); Ex. E at 67:5-19 (testifying that the name "vitaminwater" was, in part, what caused her to assume that the product had the complete amount of daily vitamins); *id.*, at 87:1-22 (testifying that the name "vitaminwater" was, in part, what made her think she was getting all the vitamins that she needed, as well as antioxidants).

[75] *See Tobacco II*, 46 Cal. 4th at 326; *see also Zeisel v. Diamond Foods, Inc.*, No. C 10–01192, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011) (granting class certification motion regarding allegations under UCL and FAL that defendants' walnut product did not provide the benefits represented on product packaging); *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1289-95 (2002) (certifying UCL and CLRA claims arising out of deceptive sales practices based on omissions of material facts).

class members.[76]

Additionally, the UCL's "unlawful" prong borrows violations of other statutes and makes them independently actionable and a *per se* violation of the statute.[77]  Here, Plaintiffs assert claims based on Defendants' violation of California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"),[78] which broadly prohibits the misbranding of food,[79] the Consumers Legal Remedy Act,[80] and the FAL.[81]  Thus, if these claims are established, there is also a *per se* unlawful business practice that results in strict liability under the UCL.[82]

Significantly, even where the amount of damages is an individual question, this does not defeat class certification.[83]  Plaintiffs must only present "'a likely method for determining class

---

[76] *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378-79 (N.D. Cal. 2010) (certifying a class action alleging claims under the UCL and CLRA); *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C07-0371, 2010 WL 4123994, at *10-11 (N.D. Cal. Oct. 6, 2010) (certifying a class action alleging claims under the UCL and FAL); *Menagerie Productions v. Citysearch*, No. CV 08-4263, 2009 WL 3770668, at *12-13 (C.D. Cal. Nov. 9, 2009) (holding that common questions predominated with respect to alleged violations of the "fraudulent" prong of the UCL where claim was predicated on a common course of conduct by the defendant); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1224 (2010) (reversing trial court's order denying class certification of plaintiffs' UCL claim).

[77] *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

[78] Health & Saf. Code §109875 *et seq.*

[79] *Id.* at §110660.  The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular."  *Id.*

[80] Cal. Civ. Code §§1750 *et seq.*

[81] Cal. Bus. & Prof. Code §§ 17500 *et seq.*

[82] *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000) ("The UCL imposes strict liability when property or monetary losses are occasioned by conduct that constitutes an unfair business practice.").

[83] *Chavez*, 268 F.R.D. at 379 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)) ("damages is invariably an individual question and does not defeat class action treatment"); *see also Yamada v. Nobel Biomedical Holding AG*, 275 F.R.D. 573, 579 (C.D. Cal. 2011) (finding class issues predominate and holding "damages calculations alone cannot defeat certification").

damages.'"[84]   As in *Chavez*, Plaintiffs have proposed a measure of damages that is determinable by objective criteria – the price paid for Defendants' products.   This is sufficient for class certification purposes.[85]   Such a restitutionary remedy is appropriate on a classwide basis.[86] Moreover, damages can be determined by reference to Defendants' own records as, at minimum, consumers paid at least what retailers paid Defendants for the products.   Thus, determining the amount of restitution to which Plaintiffs and the other California Class members may be entitled involves no calculation that threatens to raise individual issues that would outweigh common questions.

The facts discussed above show that the analysis of California Class members' rights to restitution, as well as the quantum of such relief, does not involve individual issues that could threaten the predominance of common questions.   Because each and every unit of the product at issue here was labeled with the same deceptive and misleading name, "vitaminwater," all Class members were exposed to an identical misleading representation.   The materiality of this representation is, therefore, a predominant issue.

## 2.   Common Issues Predominate on the CLRA Claim

While Plaintiffs must show actual injury for their claims under California's Consumer Legal Remedies Act,[87] causation on a class-wide basis "may be established by materiality."[88]   As

---

[84] *Chavez*, 268 F.R.D. at 379

[85] *Id.*

[86] *See Tobacco II*, 46 Cal. 4th at 320 (The language of §17203, "construed in light of the 'concern that wrongdoers not retain the benefits of their misconduct[,]' has lead courts repeatedly and consistently to hold that relief under the UCL is available without individualized proof of deception, reliance and injury.").

[87] The Consumer Legal Remedies Act ("CLRA") is codified at Cal. Civ. Code §§1750 et seq.

[88] *Stearns,* 655 F.3d at 1022 (quotations and citation omitted); *see also Cartwright v. Viking Indus.*, No. 2:07-CV-02159, 2009 WL 2982887, at *11-12 (E.D. Cal. Sept. 14, 2009) (holding that, under the CLRA,

with UCL claims, the predominance inquiry for a CLRA claim does not require individualized assessment of absent Class members' subjective beliefs.[89]   Rather, an inference of common reliance is permitted to support the certification of a class when the plaintiffs show that the representations at issue were material.[90]   As stated by the California Supreme Court in *Tobacco II*:

> A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such[,] materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.[91]

Indeed, "when plaintiffs are exposed to a common advertising campaign, common issues predominate."[92]   For example, in *Johns*, 280 F.R.D. 551, consumers brought suit against a multivitamin manufacturer, alleging the manufacturer's claims regarding prostate health benefits of its men's multivitamin products were false.[93]   The defendant contended that reliance could not be presumed since the reason for purchasing the products was an individual issue and "exposure to advertising would vary by consumer depending on the mix of television, radio, or print

---

"a presumption of reliance overcomes the individual nature of the reliance inquiry" in regard to material omissions).

[89] *Chavez*, 268 F.R.D. at 376; *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th at 1292.

[90] *Chavez*, 268 F.R.D. at 376 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010)); *Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1292-93.

[91] *Tobacco II*, 46 Cal. 4th at 327.

[92] *Johns v. Bayer Corp.* 280 F.R.D. 551 (S.D. Cal. Feb. 3, 2012) (quoting *In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011) (predominance satisfied where class members had "common contention" that defendant "made a material misrepresentation regarding the nutritious benefits of Nutella® that violated the UCL, FAL and the CLRA" and "any injury suffered by a class member in this case stems from Defendant's common advertising campaign of Nutella®").

[93] *Id.*

advertising each consumer may have viewed."[94]  The district court was not persuaded and found that reliance upon a challenged representation could be presumed where the representation allegedly appeared on every package during the class period.[95]  Indeed, the court found that "all class members *necessarily saw* [defendant]'s prostate claim, *since it appeared prominently on the packaging itself*."[96]

Likewise, here, the name vitaminwater (and the other representations about the products that appeared on every package) are clearly material, and a presumption of reliance is appropriate.  Plaintiffs have alleged (and the discovery conducted to date confirms) that the name vitaminwater misleads consumers into believing that the product is better for them than other beverages.[97]  Indeed, as Plaintiffs have testified, they decided to purchase the products based on the name "vitaminwater" believing that the products consisted of only water, vitamins, and some fruit juice (based on the fact that the products were labeled with flavors such as "dragonfruit," "acai-blueberry-pomegranate," and "orange-orange").[98]  Defendant Coca-Cola's $4 billion purchase of Glacéau and the vitaminwater brand[99] also clearly demonstrates materiality of the name and the marketing of the products.  The alleged misrepresentations, if established, would be common to all California Class members, and would violate CLRA §1770(a)(7) (by misrepresenting that the products are of a particular standard, quality, or grade) and (a)(16) (by

---

[94] *Id.*

[95] *Id.* ("This is the predominant issue, not whether or not consumers also saw television or print advertisements.").

[96] *Id.* at n.5.

[97] *See, e.g.*, *Ackerman* SAC ¶¶5-6; *see also supra* Section II.

[98] *See supra* Section II.

[99] *See* Ex. N ("Coke Takes $4 Billion Step Away From Carbonation," N.Y. Times, May 26, 2007).

misrepresenting that the products were supplied in accordance with a previous representation).[100] Accordingly, the record provides sufficient support for class certification with regard to the CLRA based on an inference of common reliance.

Even evidence that some California Class members relied on factors other than those alleged by Plaintiffs should not defeat class certification, as the fact that some consumers purchased the products for other reasons does not defeat a finding that a reasonable person would attach importance to the alleged misrepresentations in determining his or her choice of action.[101] Courts routinely find that representations similar to the ones at issue here are material for purposes of class certification.[102]

Additionally, direct and consequential damages such as those sought by Plaintiffs here are appropriate under the CLRA.[103]

### 3.   Common Issues Predominate on the GBL Claims

"In order to show that Plaintiff is entitled to relief for a violation of New York General Business Law ('GBL') § 349, relating to deceptive business practices, or § 350, relating to false advertising, a plaintiff must show:  (1) that the act, practice, or advertisement was consumer-

---

[100] *See* Compl. ¶¶ 98-99.

[101] *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011) (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157).

[102] *See, e.g., Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) (granting plaintiff's motion for class certification based on allegations that defendant had misrepresented its yogurt product to promote digestive health in a way that ordinary yogurt does not); *Mass Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1292-95 (upholding certification of CLRA claim based on allegedly deceptive representations that a financial product had certain benefits that it did not) (citing *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971); *Occidental Land, Inc. v. Superior Ct.*, 18 Cal. 3d 355, 363 (1976)).

[103] *See, e.g., Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009) (finding that "any damage" under CLRA section 1780(a) "indicates a category that includes, but is greater than, 'actual damages'" and that "may encompass harms other than pecuniary damages, such as certain types of transaction costs and opportunity costs").

oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured."[104]   "The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct."[105]   "To prevail on a claim under GBL §350, a plaintiff must demonstrate reliance on defendants' false advertising."[106]   However, reliance is not an element of a claim under GBL §349.[107]   Injury is proven by demonstrating that a plaintiff paid a premium for a product.[108]

Here, there can be no dispute that the first element of Plaintiff Ackerman's GBL claims – that Defendants' labeling of vitaminwater was consumer-oriented – is a common question susceptible to common proof.   Likewise, no individual inquiry is required to determine whether vitaminwater's labeling was misleading in a material respect since this is judged by an objective standard.[109]   Indeed, courts have routinely certified claims under New York's consumer protection and false advertising laws where, as here, all Class members were exposed to the same representations.[110]   Plaintiff Ackerman's claims in this case are based on the content of the

---

[104] *Ackerman*, 2010 WL 2925955, at *22.

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.* at *23.

[109] *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067, CV 11-5465, 2012 WL 1616912, at *11, *13 (C.D. Cal. May 7, 2012) (granting class certification with respect to claims under GBL §§349 and 350).

[110] *See Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 216, 895 N.Y.S. 2d 580, 587 (N.Y.A.D. 3 Dept. 2010) (certifying GBL §349 claim and holding that the predominant common issue presented was whether the location and typeface of spending limit fee increase disclosure received by all class members was deceptive); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524, 526 (N.Y.A.D. 1 Dept. 2001) (granting motion for class certification with respect to GBL §349 claims based on identical written solicitations); *Taylor v. American Bankers Ins. Group*, 267 A.D.2d 178, 700 N.Y.S.2d 458 (N.Y.A.D. 1

label seen by each Class member when they purchased the product. In this regard, Defendants

have stipulated that the name vitaminwater, the phrase "Nutrient Enhanced Water Beverage,"

and the phrase "vitamins+water=all you need" have appeared on all vitaminwater product labels

throughout the New York Class Period.[111]  Finally, individualized issues with respect to injury

and damages do not predominate over common issues, as the central issue presented is whether

Defendants' labeling and marketing of vitaminwater violated the GBL.[112]  As the Second Circuit

has instructed:

> There are a number of management tools available to a district court to address
> any individualized damages issues that might arise in a class action, including:
> (1) bifurcating liability and damage trials with the same or different juries; (2)
> appointing a magistrate judge or special master to preside over individual
> damages proceedings; (3) decertifying the class after the liability trial and
> providing notice to class members concerning how they may proceed to prove
> damages; (4) creating subclasses; or (5) altering or amending the class. *See, e.g.*,
> Fed. R. Civ. P. 23(c)(4) (stating that "[w]hen appropriate, (A) an action may be
> brought or maintained as a class action with respect to particular issues, or (B) a
> class may be divided into subclasses and each subclass treated as a class"); *In re
> Master Key Antitrust Litig.*, 528 F.2d 5, 12 n. 11, 14 (2d Cir. 1975) (discussing
> use of a separate liability and damages trial in an antitrust case and, if appropriate,
> use of subclasses to facilitate damages determination); *Green v. Wolf Corp.*, 406
> F.2d 291, 300–01 (2d Cir. 1968) (stating that "[t]he district court may use the
> procedures suggested by Rule 23 to cope with the [distinctions between
> plaintiffs], if, indeed, they exist" and noting that if the district court encounters
> individual damages issues "[t]he effective administration of 23(b)(3) [may] ...
> require the use of the sensible device of split trials") (internal quotation marks
> omitted); 1 [Herbert Newberg & Alba Conte, *Newberg on Class Actions*] § 4.26,
> at 4–91 to 4–97 [(3d ed. 1992)] (collecting cases applying each of these

---

Dept. 1999) (certifying claims under GBL §§349 and 350 "since the predominant focus of this litigation
is defendants' general practice of offering, in prominent print, ostensibly easily available credit insurance
coverage, while, at the same time, relegating to small, inconspicuous print the precise terms of the
coverage being extended, and then rejecting insurance claims on the ground that the customer had not
been paying for the appropriate type of insurance.").

[111] In addition, during the New York Class Period, the phrase "vitamins+water=what's in your hand"
appeared on all vitaminwater products except the "defense" flavor through 2004.

[112] *Jermyn*, 256 F.R.D. at 435-36; *see also Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 701 (S.D.
Fla. 2010), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011).

management tools); 4 Newberg & Conte, *supra*, § 18.27, at 18–98 (stating that courts "usually provide for a separate proceeding" in antitrust suits where individualized damages issues arise); 8 [Julian O. von Kalinowski *et al.*, *Antitrust Laws and Trade Regulations*] § 166.03[3][a][i] [(2d ed. 1997)] (discussing adjudication of individualized questions in separate actions or in separate damage proceedings, allowing a class action to proceed for the purposes of litigating particular issues, or dividing the class into subclasses, and collecting cases applying those tools); *id.* at § 166.03[3][b][iv] (stating that manageability problems may be obviated by dividing the class into subclasses or confining certification to certain issues).[113]

In view of the foregoing, Plaintiffs' motion for class certification with respect to the GBL §§349 and 350 claims should be granted.

### 4.   Common Issues Predominate on the Unjust Enrichment Claims Under California and New York Law.

Common issues also predominate with respect to the unjust enrichment claims under New York and California law.  A claim for unjust enrichment under New York law requires "'proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'"[114]  Similarly, the elements of an unjust enrichment claim under California law are "(1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another."[115]

As was the case with respect to Plaintiffs' claims for violation of California and New York statutory law, the predominant issue for Plaintiffs' unjust enrichment claims under California and New York law is whether Defendants were enriched at the expense of the California and New York Classes by the deceptive labeling and marketing of vitaminwater. Accordingly, common issues predominate with respect to these claims as well.

---

[113] *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001)

[114] *Jermyn*, 256 F.R.D. at 436, quoting *Briarpatch Ltd. v. Phoenix Pictures, inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

[115] *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009).

**E.      A Class Action Is Superior to Any Other Means of Resolving Plaintiffs' Claims**

In addition to predominance of common questions, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."[116]  Significantly, "the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims."[117]  Thus, "where a court has already made a finding that common issues predominate over individualized issues, [a court is] hard pressed to conclude that a class action is less manageable than individual actions."[118]  And, as is demonstrated above, common issues overwhelmingly predominate on the claims of the California and New York Classes.   With Classes consisting of tens of thousands of consumers in both California and New York,[119] the notion of having each consumer separately prove the existence of Defendants' deceptive conduct is absurd and weighs heavily in favor of a finding of superiority.[120]

Rule 23(b)(3) provides four factors pertinent to a finding of superiority: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation

---

[116] Fed. R. Civ. P. 23(b)(3).

[117] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).

[118] *Id.* at 1273.

[119] Ex. O at 2 (Declaration of Glenn M. Ricks in Support of Defendants' Notice of Removal stating that Defendants have more than 28 million bottles for purchase by consumers in California).

[120] *Klay*, 382 F.3d at 1260 (requiring hundreds of thousands of plaintiffs to repeatedly prove the deceptive scheme "is ridiculous").

of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."[121]

First, a class action is superior here because "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."[122]  "A Rule 23(b)(3) action clearly is superior where large numbers of persons, who may be unaware of the existence of a cause of action, are involved and where most of their claims are too small to warrant individual suits."[123] Here, each Class member's claim amounts to only a few hundred dollars at most and, more likely, amounts to less than that, given the retail price of vitaminwater which is approximately $1.50 bottle.  If this action is not allowed to proceed as a class action, no Class member's claim would be large enough to proceed on an individual basis.  Moreover, given that this action involves a serious threat to public health and an attempt to eliminate that threat, the interests of the Class as a whole certainly outweigh any individual damages.

Second, Plaintiffs are aware of no other pending actions (other than the ones coordinated before this Court pursuant to order of the Judicial Panel on Multidistrict Litigation) on behalf of similarly situated persons that assert the same claims as asserted here.

Third, it is clearly desirable to concentrate litigation on behalf of all Class members in one forum, since this will prevent inconsistent adjudications and will promote fair and efficient use of the judicial system.[124]  Indeed, that is what has happened here as ordered by the Judicial

---

[121] *United States v. City of New York*, 276 F.R.D. 22, 29-30 (E.D.N.Y 2011) (citing *Amchem*, 521 U.S. at 615-16); Fed. R. Civ. P. 23(b)(3).

[122] *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

[123] *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 103 (S.D.N.Y. 1981).

[124] *See Cromer*, 205 F.R.D. at 133.

Panel on Multidistrict Litigation. Moreover, Defendant Energy Brands Inc. is based in this district and both Defendants sought consolidation of all actions in one district.

The fourth and final factor that may be considered by this Court (but should be weighed as part of a consideration of the other three factors, not considered in isolation) is "the likely difficulties in managing a class action."[125]   The existence of identifiable, or even potentially severe, manageability problems does not alone render an action inappropriate for class treatment. Rather the question here is "whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification."[126]

As the claims at issue here focus on Defendants' conduct, a trial will be manageable as it will involve examining evidence of Defendants' practices rather than any issues regarding Class members or their conduct.[127]   Class treatment of these claims is the most efficient and just way to proceed.   Although Defendants will doubtless raise multiple specious distinctions in their opposition to certification, it is clear that the Classes consist of very cohesive groups of consumers who were all tricked by Defendants in the exact same way.

## V.   CONCLUSION

For all of the preceding reasons, Plaintiffs respectfully ask the Court to (1) certify the Classes as defined above; (2) appoint the Plaintiffs as Class representatives; (3) appoint Interim

---

[125] Fed. R. Civ. P. 23(b)(3)(D).

[126] *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 525 (D.N.J. 1997) (citing 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §4.3, at 4-125 (3d ed. 1992) ("'It is only when such difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper.'")).

[127] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) ("From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery.").

Class Counsel as Lead Class Counsel in the MDL proceeding and Class Counsel for the California and New York Classes; and (4) appoint counsel in the Florida, Illinois, Ohio and Virgin Islands cases as Class Counsel for the Florida, Illinois, Ohio and Virgin Islands Classes.

Dated:  June 29, 2012
New York, New York

Respectfully submitted,

SCOTT+SCOTT LLP

 /s/ Deborah Clark-Weintraub
Deborah Clark-Weintraub (DW6877)
500 Fifth Avenue, 40th Floor
New York, NY  10110
Telephone: (212) 223-6444
Fax: (212) 223-6334
Email: dweintraub@scott-scott.com

REESE RICHMAN LLP
Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone:  (212) 643-0500
Fax:  (212) 253-4272
Email:  mreese@reeserichman.com
Email:  krichman@reeserichman.com

CENTER FOR SCIENCE IN THE PUBLIC
INTEREST
Stephen Gardner
5646 Milton Street
Dallas, TX 75206
Telephone:  (214) 827-2774
Fax:  (214) 827-2787
Email:  sgardner@cspinet.org

*Interim Class Counsel*

30

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2012, the foregoing document was filed with the Clerk of the Court via this Court's CM/ECF electronic filing system, and served via ECF notice on all parties registered to receive such notice.  Parties not registered for ECF notice were served via regular U.S. Mail.

SCOTT+SCOTT LLP


 /s/ Deborah Clark-Weintraub
Deborah Clark-Weintraub (DW6877)
500 Fifth Avenue, 40th Floor
New York, NY  10110
Telephone: (212) 223-6444
Fax: (212) 223-6334
Email: dweintraub@scott-scott.com

*Interim Class Counsel*