UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GLACEAU VITAMINWATER MARKETING AND SALES PRACTICE LITIGATION (NO. II) | Case No. 1:11-md-02215-DLI-RML |

| | |
|---|---|
| BATSHEVA ACKERMAN, RUSLAN ANTONOV, and JAMES KOH, | Case No. 1:09-cv-00395-DLI-RML |

Plaintiffs,

-against-

THE COCA-COLA COMPANY and
ENERGY BRANDS INC.,

Defendants.

| | |
|---|---|
| NICHOLAS ARMADA and SCOTT COOK, | Case No. 1:11-cv-00925-DLI-RML |

Plaintiffs,

-against-

THE COCA-COLA COMPANY and
ENERGY BRANDS INC.,

Defendants.

| | |
|---|---|
| JUAN SQUIABRO, | Case No. 1:11-cv-00926-DLI-RML |

Plaintiff,

-against-

THE COCA-COLA COMPANY and
ENERGY BRANDS INC.,

Defendants.

| | |
|---|---|
| DAVID VOLZ, | Case No. 1:11-cv-00927-DLI-RML |
| Plaintiff, | |
| -against- | |
| THE COCA-COLA COMPANY and ENERGY BRANDS INC., | |
| Defendants. | |
| AHMAD KHALEEL, | Case No. 1:11-cv-00996-DLI-RML |
| Plaintiff, | |
| -against- | |
| THE COCA-COLA COMPANY and ENERGY BRANDS INC., | |
| Defendants. | |
| JULIANA FORD, | Case No. 1:11-cv-2355-DLI-RML |
| Plaintiff, | |
| -against- | |
| THE COCA-COLA COMPANY and ENERGY BRANDS INC., | |
| Defendants. | |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION FOR LEAVE TO FILE
CONFIDENTIAL DOCUMENTS UNDER SEAL**

Of the three documents at issue on this motion, plaintiffs concede that the first (the "Ugone Report") is highly confidential and should be filed under seal. Br. at 1. The parties disagree concerning whether the remaining documents (the "Marketing Stipulation" and "Scott Report") should also be filed under seal. That dispute concerns confidentiality

designations that defendants made in February 2011 (the Marketing Stipulation) and March 2012 (the Scott Report), as to which plaintiffs had a court-ordered obligation to voice any objection "as soon as practicable," but as to which plaintiffs instead explicitly and affirmatively assented in formal stipulations and representations on the record—promises on which the defendants relied.  Indeed, this Court has *already* granted the parties' joint request to file the Marketing Stipulation under seal.  Yet notwithstanding all of this history, plaintiffs now dispute defendants' ability to file these documents under seal as permitted by the Protective Order, offering no explanation for their about-face, no justification for their delay, and no demonstration of a legitimate interest in stripping protection from these documents, which all parties (and this Court, in the case of the Marketing Stipulation) have long agreed are confidential.  Plaintiffs' true aim is, presumably, to use the documents in an attempt to publicly impugn defendants for purposes unrelated to this litigation.  That is impermissible. The motion to seal should be granted.

## **BACKGROUND**

Although many of the relevant facts were summarized in defendants' opening brief, additional facts have become relevant in light of plaintiffs' opposition.  We present all relevant facts below in the interest of clarity.

The Protective Order.  The protective order entered in this MDL permits any party to designate documents as "Confidential Information" if they "contain, describe, evidence, identify, or refer to information of a confidential or proprietary nature, or . . . [are] otherwise entitled to protection under Fed. R. Civ. P. 26(c)(1)(G)," which in turn protects "trade secret or other confidential research, development, or commercial information."  *See Ackerman* Docket No. 71-2 (the "Protective Order") at ¶ 1.  If a party objects to a confidentiality designation, it must communicate that objection in writing "*as soon as practicable* following

the designation." *Id.* ¶ 6 (emphasis added).  Following the receipt of such an objection, and before any dispute is brought to the Court, the parties are required to "meet and confer in a good faith effort to resolve the objection."  *Id.*

The Marketing Stipulation.  On February 8, 2011, the parties to the *Ackerman* action signed a Stipulation of Timeline of Certain Marketing Statements (the "Marketing Stipulation," attached to Defs' Motion as Ex. 3).  The Marketing Stipulation, which was "intended to relieve the parties of the burden of engaging in discovery" as to plaintiffs' requests for confidential internal marketing materials, *id.* at 1, contains detailed information concerning defendants' vitaminwater marketing, the dates on which various marketing statements were made, and the media in which those statements were made.  Crucially, the Marketing Stipulation recites the parties' explicit agreement that its "contents *constitute and shall be treated as 'Confidential Information' and protected as such under the terms of the [Protective Order]*."  *Id.* ¶ 31 (emphasis added).  The Marketing Stipulation also recites the parties' agreement that the Marketing Stipulation's "content, text, or dates. . . will not be shared with any person who has not entered into this Stipulation and signed below except by the consent of both the undersigned plaintiffs and defendants."  *Id.* ¶ 30.  Mr. Reese signed the Marketing Stipulation, including all of the foregoing language concerning its agreed confidentiality.  *Id.* at 8.

On February 11, 2011, the fully executed Marketing Stipulation was submitted to this Court together with a request, "*on behalf of all parties*," that it be "filed under seal."  *Id.* at 1 (emphasis added).  The Court granted that request on February 14, 2011, ordering on the face of the document that the application for filing under seal had been "granted."  *Id.*  The Court at that time also approved a designation, printed in the caption of the Stipulation, indicating that the Stipulation had been "FILED UNDER SEAL."  *Id.* at 2.

4

In the year-and-a-half since plaintiffs stipulated to the confidentiality of the Marketing Stipulation and this Court granted the parties' joint request to have it filed under seal, no one ever argued, or even suggested, that the parties' agreement as to the document's confidentiality had been erroneous, or that this Court's decision to file it under seal had been improper.

The Scott Report.  On March 19, 2012, defendants served on plaintiffs the expert report of Carol A. Scott, Ph.D.  The report presented and discussed an extensive survey that Dr. Scott had conducted concerning consumers' perceptions of vitaminwater, its marketing, its competitors, its competitors' marketing, and pricing issues, among other issues more fully discussed below.  Defendants designated the report as confidential at the time it was served because it comprised confidential and proprietary information, such as the trade secret or other confidential research, development, or commercial information subject to protection under the Protective Order; and which Dr. Scott had developed at great cost to the defendants but which, if disclosed, would provide free market research and an unfair advantage to defendants' actual and potential competitors.  (Notably, defendants restricted their confidentiality designations to reports that were truly confidential:  although the Ugone and Scott reports were designated confidential, the Applegate and Swisdak reports were not.)

In the nearly six intervening months, plaintiffs never objected to the confidentiality of the Scott Report.  They certainly did not communicate an objection "as soon as practicable," as required by this Court's Protective Order.  In fact, the opposite is true:  Plaintiffs *explicitly and affirmatively agreed* to confidential treatment of Dr. Scott's opinions.   In a discussion on the record during Dr. Scott's deposition, Mr. Gardner stated as follows to defendants' counsel, Tammy Webb:  "Tammy, I don't recall but *I'm assuming this is all confidential*, that the deposition is taken under full confidentiality."  Scott Tr. 9:5-7 (emphasis added) (Ex. A

hereto).  Ms. Webb confirmed Mr. Gardner's assumption, and Dr. Scott testified in light of

the parties' agreement and on that condition.  *See id.* 9:10-11 ("MR. GARDNER: Then let's

just have that, that this is all marked 'Confidential.'").

This Motion. On August 24, 2012, defendants filed their briefs in opposition to

plaintiffs' motions for class certification.  Relying on plaintiffs' prior explicit consent to

confidential treatment of the Marketing Stipulation and Scott Report, and this Court's prior

order granting the parties' joint request to file the Marketing Stipulation under seal,

defendants attached those documents to their opposition.  On September 8, plaintiffs objected

to sealing of the Marketing Stipulation and Scott Report.  That was the very first time—

contrary to the Protective Order's requirement that objections to confidentiality be made "as

soon as practicable," *id.* ¶ 6—that defendants learned of any dispute concerning

confidentiality of the documents.  Certainly, plaintiffs never attempted to meet and confer

with defendants concerning their objections as also required by the Protective Order.  (*Id.* ¶ 6)

## ARGUMENT

Because plaintiffs explicitly consented to the confidentiality of both documents at

issue and defendants relied on that consent, plaintiffs' belated and unexplained about-face

should be rejected and the documents filed under seal.

### A.     The Marketing Stipulation

The Marketing Stipulation has been on file with the Court, under seal, since February

14, 2011.  It was then that this Court so ordered the parties' *joint request* to have the

document filed under seal—a request that followed from the parties' stipulated agreement that

the "contents [of the Marketing Stipulation] *constitute and shall be treated as 'Confidential*

*Information'* and protected as such under the terms of the [Protective Order]."[1]  Because the

Marketing Stipulation was already on file with this Court under seal at the time defendants

filed their opposition to class certification—and indeed had been on file under seal for the

prior eighteen months—there was in truth no technical need for defendants to again move for

such treatment in connection with class certification.  It was only for the Court's convenience

that defendants deemed it appropriate to attach the Marketing Stipulation as an actual exhibit

to their class certification papers, rather than citing to it by its previously-assigned docket

number.[2]  The Marketing Stipulation, which is already under seal with the Court, should

remain under seal.

        In any event, there is no basis upon which to revisit the parties' express agreement that

the Stipulation contains confidential information.  Stipulations embody "solemn

commitments" that parties are "expected, and indeed required, to honor."  *City of New York v.*

*U.S. Dept. of Commerce*, 739 F.Supp. 761 (E.D.N.Y. 1990).  Indeed, the Second Circuit has

held that "a stipulation of fact that is fairly entered into is controlling on the parties *and the*

*court is bound to enforce it*."  *Fisher v. First Stamford Bank & Trust Co*., 751 F.2d 519, 523

(2d Cir. 1984) (emphasis added).  The United States Supreme Court thus recently "reject[ed]

[a plaintiff's] unseemly attempt to escape from [a] stipulation," holding that "factual

stipulations are formal concessions . . . that have the effect of withdrawing a fact from issue

---

        [1]  To the extent plaintiffs' brief is construed as a motion for reconsideration of the
Court's order which granted the parties' joint motion to file the Marketing Stipulation under
seal, it should be denied as untimely.  *See* E.D.N.Y. Local Civ. R. 6.3 ("motion for
reconsideration or reargument of a court order determining a motion shall be served within
fourteen (14) days after the entry of the Court's determination of the original motion. . .").

        [2]  Thus, if defendants' motion to file the Marketing Stipulation under seal is denied,
defendants respectfully request leave to remove the Stipulation as an exhibit to the
Declaration of Isaac Nesser dated August 24, 2012, and instead refer the Court to the
Stipulation as previously filed and accepted for filing under seal in February 2011.

and *dispensing wholly with the need for proof* of the fact," such that it is proper to "*refus[e] to consider* a party's argument that contradict[s] a joint stipulation entered at the outset of the litigation." *Christian Legal Soc. Ch. of the Univ. of Cal., Hastings College of the Law v. Martinez,* 130 S.Ct. 2971, 2983-84 (2010) (emphasis added, alterations in original) (citing *inter alia Board of Regents of Univ. of Wis. System v. Southworth,* 529 U.S. 217, 226 (2000)). In so holding, the Court endorsed a leading treatise's statement that factual stipulations are:

> binding and conclusive ..., and the facts stated are not subject to subsequent variation.  So, the parties will not be permitted to deny the truth of the facts stated, ... or to maintain a contention contrary to the agreed statement, ... or to suggest, on appeal, that the facts were other than as stipulated or that any material fact was omitted.

*Id*. at 2984 (citing 83 C.J.S., Stipulations § 93 (2000)).

Here, plaintiffs stipulated to the fact that the "contents [of the Marketing Stipulation] constitute Confidential Information"—*i.e.,* that the contents of the Marketing Stipulation "contain, describe, evidence, identify, or refer to information of a confidential or proprietary nature," or "trade secret or other confidential research, development, or commercial information."  Protective Order ¶ 1 (incorporating Fed. R. Civ. P. 26(c)(1)(G)).  Plaintiffs made that stipulation advisedly, following extensive negotiation and discussion concerning the Marketing Stipulation generally and its confidentiality provisions specifically.  The Marketing Stipulation thus had "the effect of withdrawing . . . from issue" any factual dispute concerning whether it truly contains confidential information, "*dispensing wholly with the need for proof* of the fact" by the defendants, on this motion or otherwise.  *Christian Legal Soc.*, 130 S.Ct. at 2974.  This court is "*bound to enforce*" (*Fisher*) plaintiffs' "solemn commitment" (*City of New York*) and should "*refus[e] to consider*" plaintiffs' new and tactically-motivated argument, which "contradict[s]" their prior agreement and representation to this Court (*Christian Legal Soc*).

Of course, there is no substantive basis on which to doubt that the Marketing Stipulation contains confidential and proprietary information, including trade secret or other confidential research, development, or commercial information.  The Marketing Stipulation provides detailed disclosure of the specific marketing statements made by defendants in connection with vitaminwater, the dates on which those statements were made, and the medium in which the statements were made.  Such information, which is not available through any public means, was delivered to plaintiffs in the form of a stipulation in lieu of producing defendants' actual internal marketing documents—documents that clearly would be deemed confidential.  Disclosure of this information would provide defendants' actual and potential competitors with free access to confidential and proprietary information concerning defendants' marketing statements, practices, and strategy.  Such information easily meets the criteria for "Confidential Information" provided in the Protective Order and merits filing under seal as the plaintiffs and this Court recognized and agreed last year.[3]

## B.      The Scott Report

Plaintiffs' about-face on the Scott Report is also unavailing.  Under paragraph 6 of the Protective Order, plaintiffs had an obligation to present any objection to confidentiality "as soon as practicable" following March 19, 2012, when they learned that defendants had designated the report as confidential.  Plaintiffs did not do so.  Nor did they meet and confer with defendants concerning any such objection, as required by the Protective Order (¶ 6).  To

---

[3]   Attempting to justify their change of position, plaintiffs argue that their agreement to the "confidential and proprietary" nature of the Marketing Stipulation was good only during the discovery phase of this litigation and should be abandoned now that defendants have cited the Marketing Stipulation in their class certification papers.  That argument is impossible to square with the Marketing Stipulation's language, which agrees to confidential treatment without limitation as to purpose or date.  Indeed, defendants' need to maintain confidentiality is, if anything, more compelling now than it was during discovery, because disclosure now would make the Marketing Stipulation available to the public rather than just the plaintiffs.

the contrary, they affirmatively consented to the confidentiality of Dr. Scott's opinions *on the record* during the Scott deposition.  Scott Tr. 9:5-11 (Ex. A hereto) (MR. GARDNER: "Tammy, I don't recall but I'm assuming this is all confidential, that the deposition is taken under full confidentiality. . . . [So] let's just have that, that this is all marked 'Confidential.'"). Agreements between counsel during depositions are binding and enforceable.  *See e.g., Penn Columbia Corp. v. Cemco Resources, Inc.*, 1990 WL 6555 (S.D.N.Y. Jan. 22, 1997) (enforcing agreement made on the record during a deposition).  Thus, as with the Marketing Stipulation, plaintiffs have affirmatively agreed to confidentiality of the Scott Report and cannot seek to unwind that agreement now.  They have consented to, and by their delay waived any right to dispute, confidentiality of the Scott Report.

Moreover, in filing the Scott Report together with their class certification opposition, defendants reasonably relied on plaintiffs' prior consent to its confidentiality.  Stripping such protection from the document now would penalize defendants for plaintiffs' delay in objecting.  Indeed, this is one reason the Protective Order sensibly requires objections to be lodged "as soon as practicable"—delay in asserting such objections leads to reliance, which can lead to injury if an objection is lodged thereafter.  It is thus well settled that "[w]here there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order," so as to require disclosure of documents designated as confidential, "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need."  *Securities & Exchange Commission v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).

For example, *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979), concerned a request by the Government for access to pretrial deposition transcripts, taken in a civil action to which it was not a party, for the purposes of a criminal

investigation into the same matters underlying the civil action.  *Id.* at 293.  The depositions

had been "taken pursuant to a court-approved stipulation ... that the depositions should be

treated as confidential and used solely by the parties for prosecution or defense of the [civil]

action."  *Id*. at 292.  The Second Circuit affirmed the District Court's refusal to modify the

protective order, and thus denied the Government access to the transcripts.  *Id*. at 296.  In so

holding, the Second Circuit emphasized that protective orders, such as the one at issue here,

serve the "the vital function ... of 'secur[ing] the just, speedy, and inexpensive determination'

of civil disputes ... by encouraging full disclosure of all evidence that might conceivably be

relevant.  This objective represents the cornerstone of our administration of civil justice."  *Id.*

at 295 (citations omitted).  The Second Circuit recently re-emphasized this principle, noting

that "[w]ithout an ability to restrict public dissemination of certain discovery materials that

are never introduced at trial, litigants would be subject to needless annoyance,

embarrassment, oppression, or undue burden or expense.  And if previously-entered

protective orders have no presumptive entitlement to remain in force, parties would resort less

often to the judicial system for fear that such orders would be readily set aside in the future."

*TheStreet.com*, 273 F.3d at 229.[4]

     The same is true here.  Defendants, who relied on plaintiffs' affirmative assent to

confidentiality, should not be forced to litigate the issues now based on plaintiffs' stale

remorse.  Plaintiffs have copies of the Scott Report and have not suggested any "extraordinary

---

    [4]  Moreover, contrary to plaintiffs' suggestion, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).  The Marketing Stipulation and Scott Report, which were filed in their entirety notwithstanding that limited portions were cited in defendants' briefs, do not qualify as judicial documents.  *See Avocent Redmond Corp. v. Raritan Ams., Inc*., 2012 WL 3114855, at *15 (S.D.N.Y. July 31, 2012) (granting motion to seal "certain exhibits submitted on . . . summary judgment motions . . .  including expert testimony," because "they [did] not go to the heart of the judicial process").

circumstance or compelling need" warranting public disclosure of the Scott Report. *Id.* at 229. Certainly any legitimate interest that could be imagined pales in comparison to the public interest in disclosure of deposition transcripts for law enforcement purposes, which was deemed insufficient in *Martindell*. Absent a showing of a legitimate need, plaintiffs' belated opposition to confidentiality appears to be a tactical attempt to create "needless annoyance, embarrassment, oppression, or undue burden or expense" to the defendants. *Id.* at 229. This should be rejected.

Finally, notwithstanding plaintiffs' arguments, the Scott Report contains confidential and proprietary information, such as trade secret or other confidential research, development, or commercial information (*See* Protective Order at ¶ 1 (incorporating Fed. R. Civ. P. 26(c)(1)(G)), and as such was properly designated as confidential. Dr. Scott's report and survey, which were prepared at significant expense to defendants, constitute confidential research into commercial information about vitaminwater and consumers' reasons for purchasing and consuming it. The survey sought to determine why consumers purchase vitaminwater, what attributes about the product are most important to them, and consumers' perceptions of marketing on both the bottle and other promotional materials. The survey also obtained information on vitaminwater pricing and consumers' awareness of the prevalence of vitaminwater advertising on television, magazines, newspapers, and on social media such as facebook. If such research were made publicly available, actual and potential competitors would be given access to these materials *for free*—an opportunity to piggy-back on research that defendants conducted and to use that research to compete with vitaminwater using information concerning among other things the relative importance of various aspects of nutrient-enhanced water beverages to consumers, the types of slogans and associated phrases most often recalled by consumers, the media in which to market such a product most

effectively, and the prices consumers are willing to pay for it.  Disclosure of such

confidential, proprietary, research, development, and commercial information would

adversely affect defendants.  There is no means less restrictive than sealing by which to make

this information available to the Court without causing these outcomes.

## <u>CONCLUSION</u>

Good cause to file the Marketing Stipulation, Scott Report, and Ugone Report under

seal exists because each contains confidential and proprietary information, including research,

development, and commercial information, that would be competitively harmful if publicized,

and which so obviously meet the good cause standard that plaintiffs affirmatively consented

to their confidentiality.  Accordingly, this Court should grant defendants' motion to file the

Marketing Stipulation, Ugone Report, and Scott Report under seal.


DATED:  New York, New York
         September 14, 2012

By: ___/s/ Faith E. Gay_____
    Faith E. Gay (FG-9357)
      *faithgay@quinnemanuel.com*
    Shon Morgan
      *shonmorgan@quinnemanuel.com*
    Isaac Nesser
      *isaacnesser@quinnemanuel.com*
    QUINN EMANUEL URQUHART &
      SULLIVAN, LLP
    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    Telephone:  212.849.7220
    Facsimile: 212.849.7100


    James R. Eiszner
      *jeiszner@shb.com*
    SHOOK, HARDY & BACON L.L.P.
    2555 Grand Blvd.
    Kansas City, MO  64108-2613
    Telephone:  816.474.6550
    Facsimile:  816.421.5547

Tammy B. Webb
  *tbwebb@shb.com*
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California  94104
Telephone: 415.544.1900
Facsimile: 415.391.0281