**REESE RICHMAN LLP**
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:    (212) 643-0500
Facsimile:    (212) 253-4272
Email:  mreese@reeserichman.com

**SCOTT + SCOTT  LLP**
Deborah Clark-Weintraub
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174-4099
Telephone:    (212) 233-6444
Facsimile:    (212) 233-6334
Email:  dweintraub@scott-scott.com

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone:    (214) 827-2774
Facsimile:    (214) 827-2787
Email:  sgardner@cspinet.org

*Interim Lead Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BATSHEVA ACKERMAN, RUSLAND ANTONOV, NICHOLAS ARMADA, JULIANA FORD, AHMED KALEEL, JAMES KOH, and JUAN SQUIABRO individually and on behalf of those similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br><br>THE COCA COLA COMPANY and ENERGY BRANDS INC. (d/b/a GLACEAU),<br><br>                              Defendants. | CASE NO.  1:11-md-02215-DLI-RML<br><br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

**PORTIONS REDACTED THAT CONTAINS INFORMATION DESIGNATED BY
<u>DEFENDANTS AS CONFIDENTIAL OR HIGHLY CONFIDENTIAL</u>**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT.............................................................................. 1

II.  ARGUMENT ................................................................................................ 4

    A.   The Standard on Class Certification .................................................. 4

    B.   The Proposed Class Comports with Article III and Is Not Overbroad as
       Claimed by Defendants .................................................................... 4

    C.   The Class Is Objectively Ascertainable ........................................... 6

    D.   Common Questions of Law and Fact Predominate Over Individual
       Questions ......................................................................................... 9

        i.   Plaintiffs' Questions Are Common to the Class........................ 10

        ii.  Plaintiffs Need Not Show Individualized Proof as to Causation or
          Reliance ................................................................................... 12

        iii. Defendants' Preemption Argument Is Wrong……………………………13

        iv. Plaintiffs Have Suffered the Same Injury .................................. 14

        v.  Defendants' Affirmative Defenses Do Not Create Individual Issues .......... 15

    E.   The Claims of the Class Representatives Are Typical of the Class ............... 16

    F.   Rule 23(b)(2) Certification Is Appropriate ................................... 17

    CONCLUSION................................................................................................ 20

## TABLE OF AUTHORITIES

**CASES**

*Ackerman v. The Coca-Cola Co.*, No. 09-cv-00395,
        2010 WL 2925955 (E.D.N.Y. July 21,  2010)…………………………………………13

*Astiana v. Ben & Jerry's Homemade, Inc.*,
        Nos. C 10-4387PJH, C 10-4937PJH,
        2011 WL 2111796 (N.D. Cal. May 26, 2011) …………………..………………..……..19

*Blessing v. Sirius XM Radio Inc.*,
        No. 09-cv-10035-HB, 2011 WL 1194707 (S.D.N.Y. Mar. 29, 2011)…………………..15

*Bridge v. Phoenix Bond & Indemnity Co.*,
        553 U.S. 639, 659 (2008) …………………………………………………………………11

*Bruno v. Quten Research Inst., LLC*,
        280 F.R.D. 524 (C.D. Cal. Nov 14, 2011) …………………..……………...………..7

*Chavez v. Blue Sky Natural Beverage Co.*,
        340 F. App'x 359 (9th Cir. 2009)……………………………………………………5

*Chavez v. Blue Sky Natural Beverage Co.*,
        2010 WL 2528525 (N.D. Cal. 2010)………………………………………………..7

*Cortigiano v. Oceanview Manor Home for Adults*,
        227 F.R.D. 194 (E.D.N.Y. 2005) ………………………………………………15, 17

*Davis v. HSBC Bank Nevada, N.A.*, No. 10-56488,
        2012 WL 3804370 (9th Cir. Aug. 31, 2012)………………………………………..12

*Delarosa v. Boiron, Inc.*,
        275 F.R.D. 582 (C.D. Cal. 2011) ………………………………………………..19

*Dupler v. Costco Wholesale Corp.*,
        249 F.R.D. 29 (E.D.N.Y. 2008) ………………………………………………15

*Eisen v. Carlisle & Jacquelin*,
        417 U.S. 156 (1974) ………………………………………………………………4

*Erica P. John Fund, Inc., v. Halliburton Co.*,
        131 S. Ct. 2179 (2011)………………………………………………………...12

*Faherty v. CVS Pharmacy, Inc.*,
        No. 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011) …………………………..6

*Fogarazzao v. Lehman Bros., Inc.,*
    232 F.R.D. 176 (S.D.N.Y. 2005)…………………………………………………..10

*Harvey v. CVS Pharmacy, Inc.,*
    Case No. 08-cv-5058 (C.D. Cal. Apr. 27, 2010)…………………………………….6

*Henderson v. Gruma Corp.,*
    No. 10 Civ. 4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)………………………18

*Hohider v. United Parcel Service Inc.,*
    243 F.R.D. 147 (W.D. Pa. 2007)………………………………………………..…...9

*In re IPO Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006)…………………………………………………………...4

*In re Methyl Butyl Ether ("MBTE") Prods. Liability Litig.,*
    209 F.R.D. 323 (S.D.N.Y. 2002) ……………………………………………………9

*In re Nassau County Strip Search Cases,*
    461 F.3d 219 (2d Cir. 2006) ………………………………………………………16

*In re Playmobil Antitrust Litigation,*
    35 F. Supp. 2d 231 (E.D.N.Y. 1998)……………………………………………….....16

*In re Prudential Insurance Co. of America Sale Practices Litigation,*
    148 F.3d 283 (3d Cir. 1998) ………………………………………………………..11

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ………………………………………..………..6, 9, 12, 18

*In re Vioxx Class Cases,*
    103 Cal. Rptr. 3d 83 (Cal. App. 4th 2009) …………………………………………13

*Jermyn v. Best Buy Stores, L.P.,*
    256 F.R.D. 418 (S.D.N.Y. 2009) ……………………………………………7, 8, 9, 16

*Jermyn v. Best Buy Stores, L.P.,*
    276 F.R.D. 167 (S.D.N.Y. 2011) ………………………………………………….18

*Johns v. Bayer Corp.,*
    280 F.R.D. 551, 560 (S.D. Cal. 2012) …………………………………………….16

*Johnson v. General Mills, Inc.,*
    275 F.R.D. 282 (C.D. Cal. 2011) ……………………………………………………7

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011) …………………………………………………………...19

*Leider v. Ralfe*,
    No. 01 CIV. 3137 (HB), 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003) ………………19

*McLaughlin v. American Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2010) …………………………………………………………11

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ………………………………………………………..10, 11

*Nationwide Life Insurance Co. v. Haddock*,
    460 F. App'x 26 (2d Cir. 2012). ……………………………………………………...…17

*O'Connor v. Boeing North America Inc.*,
    184 F.R.D. 311 (C.D. Cal. 2000) ……………………………………………………….8

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) ………………………………………………………… 13

*Stearns v. Ticketmaster, Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ………………………………………………..*passim*

*Steroid Hormone Product Cases*,
    181 Cal. App. 4th 145 (Cal. Ct. App. 2010)……………………………………………..13

*Stinson v. City of New York*,
    No. 10 Civ. 4228(RWS), 2012 WL 1450553 (S.D.N.Y. Apr. 23, 2012) ………………..18

*Torres v. Gristede's Operating Corp.*,
    628 F. Supp. 2d 447 (S.D.N.Y. 2008) ………………………………………………..15

*Tourgeman v. Collins Financial Services, Inc.*,
    No. 08cv1392-CAB(NLS), 2012 WL 1327824 (S.D. Cal. Apr. 17, 2012) ……………..19

*United States v. City of New York*,
    276 F.R.D. 22 (E.D.N.Y. 2011) ……………………………………………………10

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) …………………………………………….…19

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) …………………………………………………………..10

*Weiner v. Snapple Beverage Corp.*,
No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ……………………..8, 9

*Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir.2008)………………………………..13

*Zeisel v. Diamond Foods, Inc.,*
No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. 2011) …………………...…..7, 8

## RULES

Fed. R. Civ. P. 23……..……………………………………………………………… *passim*

## OTHER AUTHORITIES

4 Newberg on Class Actions § 11:33 (4th ed.)...…………………………………………...9

Second Circuit's Local Rules and Internal Operating Procedures 32.1.1 ………………........17

## I.       PRELIMINARY STATEMENT

Defendants market their beverage to consumers by using plain words to describe the product as water with added vitamins – *i.e.* **"vitaminwater"**. For years, Defendants have employed a uniform marketing campaign designed to convey exactly this message. The product name "vitaminwater" appears prominently on the labels, as does the "type" of vitaminwater—not based on the product's flavor, but rather on its supposed benefits (*e.g.*, "defense," "rescue"). After a pervasive marketing campaign conveying that the product would assist consumers in maintaining healthy dietary practices, with statements like "vitamins+water = all you need"[1] and "Nutrient Enhanced Water Beverage", Defendants now ask the Court to blame consumers for believing exactly what Defendants wanted them to believe.  That argument should be rejected.

Defendants conveniently gloss over the pervasive and prominent health messaging surrounding vitaminwater and feign surprise that consumers don't search the Nutrition Facts panel, then multiply the number of grams of sugar by two and a half times to figure out the product's true sugar content.[2] Defendants' opposition ignores the central issue of the actions brought by Plaintiffs—whether Defendants' uniform labeling of vitaminwater products, most importantly, the name "vitaminwater," is deceptive to a reasonable consumer. In addition, Defendants mischaracterize the facts relevant to the case in an attempt to confuse the issues.[3]

Defendants rely on four purported experts (Elizabeth Applegate, Carol Scott, Keith Ugone, and Stephen Swisdak) for their opposition to class certification. Plaintiffs have filed motions to strike three of these (Applegate, Scott, and Swisdak), but even if the Court decides to consider their testimony, it does not help Defendants.   Indeed, as seen below, none defeat certification.

---

[1] *See* Stipulation of Certain Marketing Statements. Doc. 97-18.

[2] The nutrition information is based on an 8-ounce serving. There are 2.5 servings in a 20-ounce vitaminwater bottle.

[3] See Appendix 1 for examples.

**Elizabeth Applegate** is an expert on Sports Nutrition. As discussed in more detail in the motion to strike, by her own admission, she is not an expert on surveys of consumer perceptions or behavior,[4] nor has she been shown to be an expert on nutrition for the general population. The very limited use to which Defendants put her testimony goes to two narrow points: (1) The "majority of individuals seeking healthier food and beverage choices utilize the Nutrition Facts Panels and ingredients lists on product labels;" and (2) It is *possible* that vitaminwater — with high amounts of sugar and thus calories — might be healthy for some consumer somewhere.[5] As to Point 1, Applegate is not a survey expert; her testimony is at best lay opinion. As to Point 2, although she is an expert on sports nutrition for young, active, fit college students, she is not an expert on nutrition for all American consumers (or even the Plaintiffs in this case). In any event, the issue in this case is not whether consumers can drink vitaminwater as long as they cut back on other unhealthful foods, but rather whether consumers were duped into believing that vitaminwater was actually a healthful food.



[4] Deposition of Elizabeth Applegate, Ph.D., Apr. 20, 2012 at 80:6 ("Applegate Depo.").

[5] Doc. 92, Def. Brf. at 8, 21.

[6] Doc. 92, Def. Brf. at 8, citing to Scott exhibits 10-2 and 10-3.

[7] Scott exhibit 10-2.



**Stephen Swisdak** was asked by counsel for Defendants "to conduct research into knowledge widely available to the public in certain media areas concerning the sugar content, caloric content, and recommended serving size of vitaminwater."[10] Swisdak's opinion that "the average consumer had multiple opportunities . . . to be exposed to information about the sugar and caloric content of vitaminwater, as well as the fact that a bottle of vitaminwater contained 2 ½ servings"[11] is irrelevant as the issue of whether vitaminwater's labeling was deceptive as judged by an objective standard.[12]

In sum, as seen in Plaintiffs' Opening Brief and below, the standard for class certification has been met. Defendants' arguments and purported experts do not defeat this fact. Accordingly, Plaintiffs respectfully request that the proposed classes now be certified.

---

[8] Doc. 92, Def. Brf. at 31, citing Ugone Exp. Rep. ¶ 8 (internal quotations omitted).

[9] Indeed, one of Defendants' proffered experts, Stephen Swisdak, admitted that numerous media reports he reviewed acknowledged that vitaminwater was sold at a premium price. *See* Swisdak Tr. at 80, 104-06.

[10] *See* Doc. 97-14 at 3.

[11] Doc. 97-14, Swisdak Report at 30.

[12] Most of the purported "support" for this opinion consists of a variety of internet sources that Swisdak admitted were not "widely" available. *Id.* at 64-66, 69, 91. Indeed, the internet sources cited by Swisdak would not have been available to a consumer at all unless he or she sat down at a computer and conducted a Google search. *Id.* at 40-42.

## II.    ARGUMENT

### A.  <u>The Standard on Class Certification</u>

To date, Defendants have vigorously thwarted Plaintiffs' attempts to get discovery in this matter, arguing to the Court that because the burden on class certification was not great, Plaintiffs did not need the discovery.[13] The Court agreed with Defendants and denied Plaintiffs' Motion to Compel Discovery.

Now, however, Defendants make the opposite argument, claiming that "plaintiffs bear a heavy burden to certify a class" that requires "evidence" and "significant and convincing proof."[14] Defendants should be estopped from making such an argument that is contrary to the position they took when they previously prevented Plaintiffs from obtaining discovery.

Moreover, Defendants are wrong to argue that the standard for certification is steep. The United States Supreme Court and Second Circuit both have cautioned that a court is not to look into the merits of the litigation, except to satisfy that the merits can be determined on a class-wide basis.[15] With this in mind, in this matter — a case premised upon the name of the product itself that is alleged to be misleading (and which Defendants cannot contest that every single proposed class member saw) — the standard for class certification is easily met.

### B.  **The Proposed Class Comports with Article III** <br> <u>and Is Not Overbroad as Claimed by Defendants</u>

Defendants incorrectly argue that the class contains members lacking Article III standing, and therefore the class cannot be certified.[16] Indeed, this very argument was made and rejected by the Ninth Circuit in examining the same California consumer protection laws at issue here.[17]

---

[13] *See* Doc. 74 (Defendants' February 4, 2011 Opposition to Plaintiffs' Motion to Compel).

[14] Doc. 92, Def. Brf. at 1, 11.

[15] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (for the purpose of certification, the court must accept the plaintiffs' substantive allegations as true); *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (it is improper for a district court to assess "any aspect of the merits unrelated to a Rule 23 requirement").

[16] Doc. 92, Def. Brf. at 12-13.

As an initial matter, Defendants' argument regarding Article III standing is conclusory and vague, so it is unclear exactly who Defendants contend lacks standing. If Defendants are contending that the class representatives lack standing, this argument is meritless. Each of the proposed class representatives has testified that he or she paid money for the products and is seeking return of that money. Courts repeatedly have held that this constitutes standing.[18] Indeed, in *Chavez v. Blue Sky Natural Beverage Co.*,[19] the Ninth Circuit held a plaintiff's payment of money for a beverage product confers standing.[20]

Second, to the extent that Defendants are arguing that absent class members lack standing, this argument also fails. The class is defined to only include those persons who **purchased** vitaminwater. Accordingly, all members of the class have standing for the same reason *– they paid money for the product*.

The *Stearns v. Ticketmaster* case is on point here. In *Stearns*, the Ninth Circuit reversed the lower court's denial of a motion for class certification for claims brought under California's consumer protection law. In reaching its decision, the Ninth Circuit specifically addressed the issue of Article III standing in the context of a class action, and rejected the argument made by Defendants here. Specifically, the Ninth Circuit held that:

> Nor do we agree with [Defendants'] argument that because it need not be shown that class members have suffered actual injury in fact connected to the conduct of the Appellees, the alternative to the district court's ruling must be that the class lacks standing under Article III of the United States Constitution. No doubt a plaintiff's injury must be "concrete and particularized." The injury here meets both of those requirements. Each alleged class member was relieved of money in the transactions. Moreover, it can hardly be said that the loss is not fairly traceable to the action of the Appellees within the meaning of California substantive law. That law, as already noted, keys on the wrongdoing of Appellees and is designed to protect the public (including the proposed class members).    Basically,

---

[17] *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011).

[18] *See Stearns*, 665 F. 3d at 1021.

[19] 340 F. App'x 359, 361 (9th Cir. 2009).

[20] *Id.*

Appellees' real objection is that state law gives a right to "monetary relief to a citizen suing under it" (restitution) without a more particularized proof of injury and causation. That is not enough to preclude…standing here.

\*     \*     \*

One might even say that, in effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused injury; restitution is the remedy.[21]

Defendants also argue that the class definition is too broad because this action includes "numerous differing products, many of which never bore the allegedly misleading claims."[22] This argument is wrong as all the products at issue bore the same misleading claim – *i.e.*, the name itself, *vitaminwater*.

The case of *Harvey v. CVS Pharmacy, Inc.*[23] is on point here. *CVS* involved an over-the-counter vitamin supplement sold under the brand name AirShield. The defendant in *CVS* argued that the class definition was too broad, as it covered a myriad of products. The court rejected this argument based on the fact that the very name of the product itself – AirShield – was at issue:

> Here, the uniformity amongst proposed class members is based on a very simple assertion by Plaintiff: "each and every unit of Product at issue here contained the same deceptive and misleading name – AirShield…."

Here, the same question is posed – whether the very name of the product – **vitaminwater** – is itself deceptive. As held in *CVS*, this poses a common question that meets the standard for class certification.

## C. The Class Is Objectively Ascertainable

"Although there is no explicit requirement concerning the class definition in [Rule] 23, courts have held that the class must be adequately defined and clearly ascertainable before a

---

[21] *Stearns,* 655 F. 3d at 1021 (citing the California Supreme Court decision of *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).

[22] Doc. 92, Def. Brf. at 11.

[23] Case No. 08-cv-5058 (C.D. Cal. Apr. 27, 2010), slip op. attached as Appendix 2; *also see Faherty v. CVS Pharmacy, Inc.*, No. 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011).

class action may proceed."[24] "Ascertainability" requires that the description of the class be "sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member."[25] "An identifiable class exists if its members can be ascertained by reference to objective criteria."[26] That is clearly the case here, where the class definition is based on objective criteria – *e.g.*, "All California residents who purchased vitaminwater at any time from January 15, 2005 to present" and "All New York residents who purchased vitaminwater at any time from January 20, 2003 to present."[27] No subjective determinations are needed to identify members of the Classes. Therefore, all the Classes are ascertainable.[28]

Defendants nonetheless argue that proof of purchase from each individual would not be administratively feasible.[29] Defendants' focus on Class members' proofs of purchases is a red herring, and, if accepted, would prevent any class involving low-cost consumer products that are often purchased with cash and discarded after use from ever being certified and would give free license to make misleading and false statements on those types of products. But this is not the case, as actions are frequently certified that involve these types of products.[30]

While the identity of the class members need not be known at the time of certification, the class definition must be "definite enough so that it is administratively feasible for the court to

---

[24] *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, *6 (N.D. Cal. June 7, 2011) (certifying class of purchasers of walnuts).

[25] *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 432 (S.D.N.Y. 2009).

[26] *Id.* (quotations and citation omitted).

[27] Doc. 71, Pls' Brf. at 7.

[28] *Jermyn*, 256 F.R.D. at 433.

[29] Doc. 92, Def. Brf. at 14.

[30] *See e.g.*, *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) (granting plaintiff's motion for certification of class of purchasers of yogurt); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) (certification of class of purchasers of soda); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 532 (C.D. Cal. Nov 14, 2011) (certification of class of purchasers of dietary supplements); *Zeisel*, 2011 WL 2221113 (certifying class of purchasers of shelled walnuts).

ascertain whether an individual is a member."[31] Here, the classes cover sales made in California, New York, and other states during a certain definite period of time. And Defendants' own sales records reflect the amount of sales made in those states during those times. Indeed, they relied upon these very sales records to remove several of the state cases in this action to federal court.

To the extent Defendants' ascertainability argument is predicated on the fact that Defendants do not sell directly to consumers, the case of *Zeisel v. Diamond Foods* is on point. *Zeisel* involves the sale to consumers of individual packets of shelled walnuts that were alleged to contain false representations regarding the health benefits of walnuts. The defendant argued that it was not administratively feasible to determine if a person is a member of the proposed class because defendant "sells its Shelled Walnut products to retailers and it does not track consumer purchases . . . and that neither the prospective class members nor the Court would have a means by which they could determine whether they purchased the Shelled Walnut products at issue in this litigation" because most plaintiffs did not have receipts or other proof of purchase.[32] The court rejected this argument, holding that:

> The Court is not persuaded. The proposed class includes (1) all persons (2) who purchased Shelled Walnut Products in 6 ounce, 10 ounce, 16 ounce and/or 3 pound bags (3) which bore labels bearing the Structure Function Claim and Banner (4) from March 22, 2006 through the present. The Court does not find this definition to be subjective or imprecise. Rather, it includes objective characteristics that would permit a consumer to identify themself as a member of the proposed class.

Defendants' reliance on *Weiner v. Snapple Beverage Corporation*[33] is misplaced.[34] First, while the *Weiner* opinion discussed ascertainability in dicta, the court noted that such analysis was unnecessary, given that the court had already found the plaintiffs had failed to satisfy Rule

---

[31] *O'Connor v. Boeing North Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 2000).

[32] *Zeisel*, 2011 WL 2221113, at *6 (N.D. Cal. 2011).

[33] No. 07 Civ. 8742, 2010 WL 3119452, at *12-13 (S.D.N.Y. Aug. 5, 2010).

[34] Doc. 92, Def. Br. at 14.

23's predominance requirement.[35] Moreover, the ascertainability analysis in *Weiner* contradicts established case law.[36] Lastly, *Weiner* cites no authority for the finding that declarations, or other proof of purchase (such as receipts or labels), from putative class members would not be sufficient to satisfy Rule 23's implied ascertainability requirement.[37] Indeed, declarations from putative class members are commonly used by special masters or claims administrators in class actions involving consumer products.[38]

Defendants also argue that the Court would have to conduct mini-trials of absent class members who submit declarations in order to determine if they relied upon the name vitaminwater.[39] This is not true, as the operative statutes only require a showing of reliance by the proposed class *representatives*.[40]

Finally, Defendants' argument regarding ascertainability does not apply to the injunctive relief class Plaintiffs seek to certify.[41]

### D. <u>Common Questions of Law and Fact Predominate Over Individual Questions</u>

Rule 23(b)(3)'s predominance inquiry simply "tests whether proposed classes are sufficiently cohesive," encompassing "cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situation,

---

[35] *Weiner*, 2010 WL 3119452, at *12.

[36] *See Jermyn*, 256 F.R.D. at 433; *see also, e.g.*, *In re Methyl Butyl Ether ("MBTE") Prods. Liability Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) ("Here, [the] plaintiffs' class definition refers only to objective criteria . . . . Thus, this proposed class meets Rule 23(a)'s implied requirement that it be theoretically 'ascertainable.'").

[37] *See Weiner*, 2010 WL 3119452, at *13.

[38] *E.g.*, "Although the court has general supervisory powers over settlements, it usually does not handle the actual administration. As a rule, the administration is delegated either to a special master or to the plaintiff's counsel or a committee of counsel. If a special master is appointed, he or she is usually granted the power to supervise and carry out the court-ordered notice procedures, to receive all proofs of claim, to rule on the validity of claims, to conduct hearings on challenges to claims, and to order final distribution of the settlement fund." 4 Newberg on Class Actions § 11:33 (4th ed.).

[39] Doc. 92, Def. Brf. at 15.

[40] *See Stearns*, 655 F. 3d at 1021; *In re Tobacco II Cases*, 46 Cal. 4th at 312.

[41] *See Hohider v. United Parcel Serv. Inc.*, 243 F.R.D. 147, 209–11 (W.D. Pa. 2007) (ascertainability less important in Rule 23(b)(2) class actions seeking injunctive relief).

without sacrificing procedural fairness or bringing about other undesirable results."[42] Courts have found that this requirement for maintenance of a class action is readily met in cases of consumer protection actions, as is the case here.[43]

Here, Plaintiffs have shown that common issues predominate over individual issues.

### i.  Plaintiffs' Questions Are Common to the Class

Plaintiffs have shown that Defendants' marketing and labeling of vitaminwater was a common practice. Classwide proceedings in this case would indeed "generate common answers apt to drive the resolution of the litigation," and any dissimilarity within the proposed class would not "impede the generation of common answers."[44]

Defendants' attempt to portray vitaminwater's marketing and labeling as impossibly diverse is wrong. Courts have found that "claims based on uniform misrepresentations made to all member of the class are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof."[45] Here, the name "vitaminwater" is both material and uniform to all of the products at issue.  Indeed, the name "vitaminwater" is prominently displayed on each and every bottle.

Moreover, Plaintiffs need not have seen all of the statements in Defendants' marketing campaign for vitaminwater, or have purchased every single flavor of vitaminwater. To meet Rule 23(b)(3)'s predominance inquiry, it is enough to show that Defendants engaged in a common course of conduct.

---

[42] *United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011); Fed. R. Civ. P. 23(b)(3).

[43] *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2005).

[44] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011).

[45] *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) (certifying class involving "materially uniform" representations, finding that such misrepresentations can be "demonstrated using generalized rather than individualized proof.").

Notably, Defendants provide no evidence or legal support whatsoever for their bizarre contention that each Plaintiff must have seen *every* marketing message Defendants ever made regarding vitaminwater during the Class Period in order to identify a certifiable class.[46] Instead, the inquiry into commonality "should remain focused on whether material variations in the misrepresentations existed."[47] That is not a problem here. Indeed, the name of the product, which is alleged to be misleading, appeared on every single product at issue. "Evidence of materially uniform misrepresentations is sufficient to demonstrate the nature of the misrepresentation," and "an individual plaintiff's receipt of and reliance upon the misrepresentation" are then "simpler matters to determine."[48]

Plaintiffs testified that they saw examples of vitaminwater's messaging – *i.e.* the name of the product itself, and all Plaintiffs subsequently relied upon that messaging in deciding to purchase vitaminwater. Unless Defendants can prove that consumers purchased vitaminwater without seeing the name of the product, the predominance inquiry is clearly met.

Defendants rely on *McLaughlin* to assert that individualized proof is necessary in the instant case. This is misplaced.  The *McLaughlin* court concluded that the law under which plaintiffs sued, the Racketeer Influenced and Corrupt Organizations Act (RICO), required a distinctly exigent, individualized inquiry. However, this is not the standard in this case, which does not assert any claims under RICO, but rather consumer protection statutes that have different elements and a much lesser standard than RICO.[49]

---

[46] According to the Second Circuit, "The Third Circuit has considered this issue in the greatest depth." *Moore*, 306 F.3d at 1254 (citing *In re Prudential Ins. Co. of Am. Sale Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) (certifying a class involving "false and misleading sales presentations, policy illustrations, marketing materials, and other information . . . because Prudential had engaged in a 'common course of conduct.'")).

[47] *Moore*, 306 F.3d at 1255 ("No particular form of evidentiary proof is mandated.")

[48] *Moore*, 306 F.3d at 1255 (citing *Prudential*, 148 F.3d at 315).

[49] The Supreme Court later rejected the requirement of individualized reliance even in RICO cases. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 659 (2008).

### ii.   Plaintiffs Need Not Show Individualized Proof as to Causation or Reliance

It is well-settled law "that relief under [California's] UCL is available without individualized proof of deception, reliance and injury." [50] Thus, Defendants' assertion that Plaintiffs' claims would involve individualized inquiry is simply incorrect.[51]

Although "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action," [52] the California Supreme Court has held that: "to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived."[53] The UCL focuses "on the defendant's conduct, rather than the plaintiff's damages," and does not require a showing of reliance.[54]

For Plaintiffs' California claims, it is enough to show only that the class representatives suffered injury in fact due to Defendants' actions.[55] California "law keys on the representative party, not all of the class members, and has done so for many years."[56]

For this reason, Defendants' reliance on *Davis v. HSBC Bank Nevada, N.A.*, No. 10-56488, 2012 WL 3804370 (9th Cir. Aug. 31, 2012) is misplaced. *Davis* dealt with a motion to dismiss, not a motion for class certification. And in *Davis*, the court applied the objective, reasonable consumer standard and held that no reasonable consumer would be misled by the marketing in that case. Here, however, Defendants previously made the same argument, which they lost as Judge Gleeson held that a reasonable consumer could be misled by Defendants'

---

[50] *In re Tobacco II Cases*, 46 Cal. 4th at 320; *see also Stearns*, 655 F.3d at 1020-21.

[51] Doc. 92, Def. Brf. at 23.

[52] *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011).

[53] *In re Tobacco II Cases*, 46 Cal. 4th at 312; *Stearns*, 655 F.3d at 1020-21.

[54] *Stearns*, 655 F.3d at 1020-21 (citing *In re Tobacco II Cases*, 46 Cal. 4th at 312).

[55] *Id.*

[56] *Id.* ("At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class. The inquiry is whether any named plaintiff has demonstrated that he has sustained or is imminently in danger of sustaining a direct injury as the result of the challenged conduct.").

marketing.[57]   Moreover, in cases dealing with class certification, the courts have held that the "individualized inquiry" of absent class members that Defendants seek here is not permitted, as the "relief under the UCL is available without individualized proof of deception, reliance and injury."[58]  The same is true for New York's consumer protection law, GBL §349, as reliance is not an element of a claim brought under that statute.[59]

Plaintiffs' CLRA claims also satisfy the predominance inquiry. For a CLRA claim, "[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."[60] Here, the name **vitaminwater** was material to each Plaintiff's purchase and was viewed by all members of the proposed classes; accordingly, there is a classwide inference of reliance upon Defendants' misrepresentations[61].

### iii.  Defendants' Preemption Argument Is Wrong

As part of their opposition to certification, Defendants claim that "plaintiffs contend the key common question is whether vitaminwater's purportedly high sugar content renders the beverages unhealthy" and that this question is barred by preemption.[62]  However, whether this "key common question" is preempted — and the prior opinion of this Court[63] shows that it is not

---

[57] *Ackerman v. The Coca-Cola Co.*, No. 09-cv-00395, 2010 WL 2925955, *15 (E.D.N.Y. 2010) ("The FDA has recognized that product names such as "vitaminwater" can be deceptive in that such names may mislead consumers into believing the listed ingredients are the sole components of a beverage.").  *See also Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir.2008).

[58] *Id.*

[59] *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ("a private action brought under § 349 does not require proof of actual reliance…New York courts, in keeping with the prophylactic purposes of § 349, instead required that a plaintiff seeking to recover under § 349 show only that the practice complained of was objectively misleading or deceptive").

[60] *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (Cal. Ct. App. 2010).; *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 95 (Cal. Ct. App. 2009).

[61] Also, materiality is often a question of fact, and as such, cannot be decided at the class certification stage, but rather is to be decided by the trier of fact.  *Id.*

[62] Doc. 92, Def. Brf. at 26.

[63] Doc. 44, Order on Motion to Dismiss at 12-27.

— the argument ignores the numerous common questions cited by Plaintiffs, including:

- The product name (vitaminwater) misled consumers to believe that vitaminwater is simply water fortified with vitamins.

- The name vitaminwater misled the Plaintiffs to believe that vitaminwater contains nothing but vitamins and water.

- Defendants deceptively marketed and advertised vitaminwater as a fortified drink.[64]

None of these common facts set out by Plaintiffs amounts to Defendants' manufactured claim "whether vitaminwater's purportedly high sugar content renders the beverages unhealthy."

### iv.  Plaintiffs Have Suffered the Same Injury

Defendants claim that Plaintiffs had "full knowledge of vitaminwater's ingredients and thus were not injured."[65] Defendants support this absurd claim by asserting that if a plaintiff continued purchasing vitaminwater after drinking it, she was not injured. Not only does this argument improperly misrepresent the facts,[66] it also totally ignores that each plaintiff was deceived into purchasing vitaminwater in the first place.

Defendants also allege that purportedly individualized damages prevent class certification.[67] However, the "presence of a damages claim will not defeat maintenance of a class action under Rule 23(b)(2) when the requested . . . injunctive relief is a significant component of the overall relief which plaintiffs seek."[68] Moreover, "that damages may have to be ascertained

---

[64] Doc. 71, Pls' Brf. at 2-7, *passim*.

[65] Doc. 92, Def. Brf. at 27.

[66] *See supra* note 3. After learning the true sugar content in vitaminwater, Ms. Ackerman rarely drank the product anymore as she likened it to soda and realized "it just wasn't benefitting me." Ackerman Tr. 102:23-103:2. Mr. Armada testified that he continued drinking vitaminwater after reading the sugar content for a few months because he didn't find out until later "that there was just a serving size that they were talking about as opposed to the content of sugar in the entire bottle." Armada Tr. 18:25-19:2.

[67] ██████████████████████████████████████████████████████████████████████

[68] *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 207 (E.D.N.Y. 2005).

on an individual basis is not, standing alone, sufficient to defeat class certification."[69] Plaintiffs have shown the exact same injury due to Defendants' actions, and, contrary to Defendants' base assertions attempting to debate the merits at class certification, they need not show such injury with regard to all individual members of the proposed classes.

### v.   Defendants' Affirmative Defenses Do Not Create Individual Issues

In a last-ditch attempt to defeat class certification, Defendants raise the affirmative defenses of the voluntary payment doctrine, statute of limitations, and laches.[70] Similar to Defendants' attack involving Class members' proofs of purchases, these defenses are nothing more than another red herring. Again, if Defendants' objections were truly fatal to class certification, no class would ever be certifiable.

Affirmative defenses must be examined in the context of the entire case to determine whether the defenses as to the named plaintiff are so atypical or complex that they threaten to become the focus of the litigation. Accordingly, courts have held that the voluntary payment doctrine does not render consumer protection claims so complex as to bar class certification.[71] Indeed, if the voluntary payment defense proves common to numerous class members, and thus is not a unique defense, it would not render Plaintiffs' claims atypical. Second, even in cases where the voluntary defense doctrine "is unique in its application" to a case, "the Court does not view this potential factual issue as so complex that it will threaten to become the focus of the litigation or affect her ability to act in the best interest of the class."[72]

---

[69] *Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035-HB, 2011 WL 1194707, at *8 (S.D.N.Y. Mar. 29, 2011).

[70] Defendants' affirmative defense of laches is equally inappropriate here. Laches "is an equitable defense that bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 464 (S.D.N.Y. 2008). However, "[w]hen a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." *Id.* Here, all claims have statutes of limitations.

[71] *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008) (finding voluntary payment doctrine did not defeat class certification brought under GBL § 349).

[72] *Id.* at 39.

Case 1:11-md-02215-DLI-RML   Document 113   Filed 09/17/12   Page 22 of 27 PageID #: 2398

Defendants' statute of limitations defense, too, is off the mark. In UCL and CLRA actions, "whether the class properly includes consumers who purchased before the applicable statutes of limitations is a merits-based, classwide issue."[73] Second Circuit courts have also held that "a statute of limitations defense does not affect commonality."[74]

At the same time, no matter what affirmative defenses Defendants raise, Second Circuit courts have firmly held that "although a defense may arise and may affect different class members differently, this occurrence does not compel a finding that individual issues predominate over common ones, as would preclude class certification; so long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification."[75] Plaintiffs' common issues bind members of the proposed classes together, and thus the affirmative defenses are subject to generalized proof.

**E.   The Claims of the Class Representatives Are Typical of the Class**

Plaintiffs readily meet Rule 23(a)(3)'s typicality requirement. Pursuant to this rule, a plaintiff simply must show that "the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members."[76] Defendants assert that Plaintiffs' claims are not typical since they did not buy every product.[77] This is wrong and does not does not render claims atypical.[78]

---

[73] *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012).

[74] *Jermyn*, 256 F.R.D. at 430.

[75] *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006); Fed. R. Civ. P. 23(b)(3), 28 U.S.C.A.

[76] *In re Playmobil Antitrust Litig.*, 35 F.Supp. 2d 231, 241 (E.D.N.Y. 1998).

[77] Doc. 92, Def. Brf. at 40.

[78] *Cortigiano*, 227 F.RD. at 206.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."[79] This purpose is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[80] Plaintiffs have shown their claims arise from the same course of events—Defendants' deceptive marketing and labeling of their beverage product "vitaminwater". Plaintiffs further rely on the same evidence, based on the same legal theories, to support their claims. Finally, Plaintiffs seek the same relief for themselves as well as members of the proposed classes. Clearly, Rule 23(a)'s typicality is more than met.

**F.  Rule 23(b)(2) Certification Is Appropriate**

Defendants' argument that Plaintiffs' claim for injunctive relief is barred relies on an unpublished Summary Order issued by the Second Circuit in *Nationwide Life Insurance Co. v. Haddock.*[81] However, pursuant to the Second Circuit's Local Rules and Internal Operating Procedures ("IOP"), "[r]ulings by summary order do not have precedential effect."[82] Moreover, although the *Nationwide* plaintiffs sought monetary damages, as was the case in *Wal-Mart*, they sought class certification only pursuant to Rule 23(b)(2). As explained in Plaintiffs' Master Memorandum in support of class certification,[83] since *Wal-Mart* was decided, courts in the Second Circuit have held that when a district court engages in the analysis required under Rule 23(b)(2) and Rule 23(b)(3), a class can be certified seeking both injunctive relief and money

---

[79] *Stearns*, 655 F.3d at 1019.

[80] *Id.*

[81] 460 F. App'x 26 (2d Cir. 2012).

[82] *See* IOP 32.1.1.

[83] *See* Doc. 71, Pls' Brf.

damages.[84] In this case, both the California consumer protection claims (the UCL and CLRA) and the New York claim (GBL §349) allow for both injunctive and monetary relief.

Even if the Court decides not to certify a (b)(3) damages class, Plaintiffs are entitled to seek a (b)(2) class that provides only equitable relief. Accordingly, *Wal-Mart* is no bar to class certification under Fed. R. Civ. P. 23(b)(2) in this case.

Alternatively, Defendants argue that Plaintiffs lack standing to seek to enjoin Defendants from falsely labeling and marketing vitaminwater because Plaintiffs are now aware of Defendants' misconduct.[85] This argument is also meritless. Where, as here, the underlying deceptive conduct is ongoing, a plaintiff with standing to bring consumer protection claims on behalf of a class has standing to bring a claim for injunctive relief.[86] Indeed, if the threshold for standing to seek injunctive relief in federal court was viewed as narrowly as urged by Defendants, actions in federal court under state consumer protection laws to enjoin false advertising would be barred because a plaintiff would never have standing.[87]

Defendants' argument regarding Plaintiffs' claims for injunctive relief under the UCL would thwart the primary purpose of the statute.[88] The UCL is focused on "the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."[89] "The purpose of such relief, in the context of a UCL action, is to protect consumers against unfair business practices by

---

[84] *See Stinson v. City of New York*, No. 10 Civ. 4228(RWS), 2012 WL 1450553, at *21 (S.D.N.Y. Apr. 23, 2012); *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 173-74 (S.D.N.Y. 2011).

[85] Doc. 92, Def. Brf. at 34.

[86] *See Henderson v. Gruma Corp.*, No. 10 Civ. 4173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011).

[87] *Id.* at *7 ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing….").

[88] *See id.* at *8.

[89] *In re Tobacco II Cases*, 46 Cal. 4th at 312.

18

stopping such practices in their tracks."[90] Indeed, courts have made clear that injunctive relief is "the primary form of relief available under the UCL," while restitution is merely "ancillary."[91]

Accordingly, federal courts have frequently permitted plaintiffs to seek injunctive relief in false advertising class actions brought under California's consumer protection laws even after they became aware of the misrepresentations.[92] Because Defendants have not presented evidence that they have removed all of the allegedly misleading labeling from vitaminwater, Plaintiffs, as representatives of the Classes, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendants' ongoing false advertising.[93]

Similarly, New York's consumer protection statutes allow for both injunctive and monetary relief, and for 23(b)(2) class action certification where damages are merely incidental to the injunctive or declaratory relief. Rule 23(b)(2) certification is appropriate in actions brought under New York's consumer protection law if the court finds that:

> (1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claims, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy . . . [A] district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.[94]

---

[90] *Id*. at 320.

[91] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011); *In re Tobacco II Cases*, 46 Cal. 4th at 319.

[92] *See, e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387PJH, C 10-4937JH, 2011 WL 2111796, at *12-*13 (N.D. Cal. May 26, 2011) (rejecting argument that plaintiffs were not entitled to injunctive relief in an action brought under the UCL charging a manufacturer of ice cream with misleading labeling); *Delarosa v. Boiron, Inc*., 275 F.R.D. 582, 591-92 (C.D. Cal. 2011) (certifying an injunctive relief class in an action brought under the UCL and CLRA for deceptive labeling and marketing against manufacturer of over-the-counter homeopathic cold medicine); *Von Koenig v. Snapple Beverage Corp*., 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (denying motion to dismiss causes of action for injunctive relief in class action alleging deceptive beverage labeling).

[93] *See Astiana*, 2011 WL 2111796, at *12-*13; *see also Tourgeman v. Collins Financial Servs., Inc.*, No. 08cv1392-CAB(NLS), 2012 WL 1327824 (S.D. Cal. Apr. 17, 2012).

[94] *Leider v. Ralfe*, No. 01 CIV. 3137 (HB), 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003).

19

Again, because Defendants have not removed the misleading labeling from vitaminwater, and have not ceased the misleading marketing surrounding the product, Plaintiffs, as representatives of the Classes, are entitled to pursue injunctive relief on behalf of all consumers. In this case, injunctive relief is clearly both necessary and appropriate in order to protect consumers from Defendants' ongoing false advertising.

## CONCLUSION

For the preceding reasons, Plaintiffs respectfully ask the Court to (1) certify the Classes as previously defined; (2) appoint the Plaintiffs as Class representatives; and (3) appoint Interim Class Counsel as Lead Class Counsel in the MDL proceeding and Class Counsel for the California and New York Classes.

Dated:  September 14, 2012                     Respectfully submitted,

**REESE RICHMAN LLP**

*/s/ Michael R. Reese*
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York New York 10001
Telephone: (212) 643-0500

**SCOTT + SCOTT  LLP**
Deborah Clark-Weintraub
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Telephone: (212) 233-6444

**CENTER FOR SCIENCE IN
THE PUBLIC INTEREST**
Stephen Gardner
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774

*Attorneys for Plaintiffs and the proposed class*

20

## CERTIFICATE OF SERVICE

I, Michael R. Reese, do hereby certify that I sent an unredacted copy of the above document – PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, via electronic mail to the following counsel on September 17, 2012:

Faith E. Gay
faithgay@quinnemanuel.com
Shon Morgan
shonmorgan@quinnemanuel.com
Isaac Nesser
isaacnesser@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP

James R. Eiszner
jeiszner@shb.com
Tammy B. Webb
tbwebb@shb.com
SHOOK HARDY & BACON L.L.P.

*Counsel for the Defendants*

Dated:  September 17, 2012                              */s/ Michael R. Reese*
                                                        Michael R. Reese