**Shook,**
**Hardy&**
**Bacon.** L.L.P. ®

www.shb.com

October 24, 2012

**Tammy B. Webb**

<u>VIA ECF</u>

Hon. Robert M. Levy
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

One Montgomery, Suite 2700
California 94104
415.544.1900
415.391.0281 Fax
tbwebb@shb.com

Re:     *In Re: Glaceau Vitaminwater Litig.,* Case No. 1:11-md-02215-DLI-RML

Dear Judge Levy:

        This letter provides answers to issues on which the Court invited responses, or citation of additional authority, during the October 11 class certification hearing.

        **1.      Continued Progress As An MDL**

        Defendants have considered the issue at Your Honor's request (Tr. 111:7 - 112:8), and believe that this litigation should remain before this Court as an MDL. Coordination is necessary to prevent conflicting class action rulings, *In re Plumbing Fixture Cases,* 298 F. Supp. 484, 493-94 (J.P.M.L. 1968), and this Court remains the most qualified and efficient forum in which to resolve class certification. Indeed, sending each of the member cases back to their transferor courts before a decision on class certification would interfere with the efficiencies that the JPML intended when it created this MDL, at which time it was well aware that certain "questions of law are unique to the various jurisdictions." *In re Glaceau*, 764 F. Supp. 2d 1349, 1350-51 (J.P.M.L. 2011) (noting that "transferee judges routinely apply the laws of one or more jurisdictions").

        **2.      Summary Judgment In Lieu Of Class Certification**

        In answer to Your Honor's question (Tr. 184-191), defendants do not consent to litigating summary judgment on the merits prior to class certification. Throughout this litigation, plaintiffs have insisted that class certification should be resolved before summary judgment, and defendants as a result devoted substantial time and resources to producing the unrebutted factual record and expert evidence now before the court on all key issues relating to class certification, even though the evidentiary burden at class certification rests with plaintiffs. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Defendants feel confident that class certification must be denied in view of the law and factual record, and believe that the Court should resolve that issue.

        Nonetheless, if the Court is inclined to consider a summary judgment motion now in order to streamline the class certification analysis, defendants would propose to move for summary judgment against plaintiffs' requests for prospective injunctive relief. It is well established that a plaintiff who seeks a prospective injunction "must show a likelihood that he . . . will be injured *in the future*" in order to satisfy Article III. *Shain v.*

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.


www.shb.com

*Ellison,* 356 F.3d 211, 215 (2d Cir. 2004) (emphasis added) (citation and internal quotation marks omitted); *see also Carver v. City of New York*, 621 F. 3d 221, 228 n.6 (2d Cir. 2010) (no standing where injunction might benefit future individuals but not the plaintiff). This rule applies fully in the class context,[1] and it bars plaintiffs' requested injunctions because each plaintiff "now [has] knowledge of Defendant's alleged misconduct," and "cannot show [they are] realistically threatened by a repetition of the alleged violation." *See Campion v. Old Republic Home Prot. Co., Inc.*, 861 F. Supp. 2d 1139, 1146-50(S.D. Cal. 2012) (holding that Article III standing was properly addressed in a motion for summary judgment and granting defendant's motion because plaintiff could not show "an actual and immediate threat that [he would] be wronged again in the same way by Defendant"); *Dukes*, 131 S. Ct. at 2560 (certification of Rule 23(b)(2) class seeking some monetary relief improper where some members of putative class lack standing to seek underlying injunctive relief). For this reason, injunction requests are commonly held unavailable in class actions when the purported class representative lacks standing to pursue injunctive relief under Article III. *See, e.g.*, *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 951-952 (S.D. Cal. 2007) (plaintiffs who was fully aware of facts underlying alleged false advertising claims lacked standing to pursue prospective injunctive relief under Article III); *Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167, 2009 WL 4842801, at *4 (S.D. Cal. Dec. 14, 2009) (same, holding "prospective [injunctive] relief will not redress [p]laintiffs' alleged injuries"), *vacated on other grounds by Laster v. T-Mobile USA, Inc.*, 466 Fed. Appx. 613, 614 (9th Cir. 2012); *Dietz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902, * 3 (N.D. Cal. Dec. 21, 2006) (dismissing claims for injunctive relief on standing grounds because purported class representative challenging fees for rented cable equipment was no longer a subscriber). In addition to being required by Article III, dismissal of the injunction claims would not implicate merits discovery because plaintiffs' own complaints demonstrate that they are in no danger of future harm, and it would simplify the class certification inquiry by mooting plaintiffs' requests for certification under Rule 23(b)(2).

### 3.    Choice Of Law

In answer to Your Honor's question (Tr. 15-16), this Court is not bound by the Ninth Circuit's decision in *Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011). Second Circuit authority controls this Court's analysis of Article III and Rule 23.[2] Thus, as to Article III standing, the named plaintiffs *and* all absent class members must have

---

[1]   *Carver*, 621 F.3d at 228 n. 6 (citing *Doe v. Blum*, 729 F.2d 186, 190 n. 4 (2d Cir. 1984)); *Portis v. City of Chicago*, 347 F. Supp. 2d 573, 579 (N.D. Ill. 2004) (plaintiffs cannot "revive a dead claim for injunctive relief by 'piggy-back[ing]' on the claims of the class they represent").

[2]   *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *In re Pan Am. Corp.*, 950 F.2d 839, 847 (2d Cir. 1991); *Hinds County v. Wachovia Bank, N.A.*, 708 F. Supp. 2d 348, 366 n.11 (S.D.N.Y. 2010); *In re Zyprexa Prod. Liab. Litig.*, 671 F. Supp. 2d 397, 430 (E.D.N.Y. 2009); D. Richards, *An Analysis of the Judicial Panel on Multidistrict Litigation's Selection of Transferee District & Judge*, 78 Fordham L. Rev. 311, 316 (2009).


Shook,
Hardy &
Bacon L.L.P.
www.shb.com

standing.  *Denney v. Deutsche Bank AG*, 443 F.3d 252, 264 (2d Cir. 2006).  Applying this standard, certification must be denied because the record evidence shows that the requested classes include members who lack Article III injury caused by plaintiffs' conduct. Statutory standing under the UCL, GBL or other state statutes is irrelevant to Article III. *See Thomas v. JP Morgan Chase & Co.*, 811 F. Supp. 2d 781, 790 (S.D.N.Y. 2011).

A court recently discussed the issue of which court's law applies on procedural and substantive issues— as well as several other key issues raised by Your Honor — as part of its class certification analysis in a multidistrict litigation concerning false advertising claims under California law.  *In re Yasmin Mktng., Sales Practices & Prod. Liab. Litig.*, No. 3:09-cv-20001, 2012 WL 865041 (S.D. Ill. Mar. 13, 2012).[3]  As Chief Judge Herndon emphasized there, a transferee court interprets and applies Article III and Rule 23 to a transferred case just as it would in a case originally filed in the transferee court.  *Id.* at *8-9, 12.[4]  It is clear that this Court applies Second Circuit law in analyzing the Article III and Rule 23 requirements and does not need to undertake an *Erie* analysis to make this determination. Plaintiffs' suggestion that the California Supreme Court provides guidance on this issue (Tr. 15-18), is incorrect.  *See id.* at *8, 12-13, 18 (holding that a "California Supreme Court decision does not govern whether a plaintiff has constitutional standing[, which] is a federal matter governed by Federal law," and rejecting the plaintiff's "mistaken" argument that "class certification may proceed once the name plaintiff establishes statutory standing").

Finally, although Article III trumps any relaxed state statutory requirements, caselaw has long rejected Ms. Weintraub's suggestion—first made at oral argument (Tr. at 70-71)—that statutory standing under the GBL can be satisfied by the mere purchase of a product.[5]  Likewise, a newly-issued decision dismissed claims under the California UCL, FAL, and CLRA, because "Plaintiff [had] not allege[d] that Defendants' alleged misrepresentations influenced his decision to purchase his computer in any way."  *Elias v. Hewlett-Packard Co.*, No. 12-cv-00421, 2012 WL 4857822, at *10 n.3 (N.D. Cal. Oct. 11, 2012) ( "[p]laintiff's [misrepresentation] claims . . . fail because . . . his only statement of reliance on Defendants' conduct is entirely conclusory in nature—it does not

---

[3]   A courtesy copy of this opinion is attached as Exhibit A.

[4]   Also relevant is the court's holding that the class could not satisfy Rule 23 — despite California's "reasonable consumer" standard — because there was no uniformity in consumers' exposure to the advertisements or corrective materials (here, the vitaminwater nutrition facts label), or in the materiality of the purported misrepresentations to individual consumers and any reliance.  *Id.* *19-21, 25.

[5]   *See Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (N.Y. 1999) ("[Plaintiffs] posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349. We disagree."); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92-93 (S.D.N.Y. 2010) (plaintiff's allegation that he suffered damages in the form of the "the financial costs of [purchasing] Defendant's products" did not constitute an injury "by reason of" defendant's allegedly false advertising sufficient to confer standing to bring suit under GBL § 349).

3



allege with any particularity *how* Plaintiff relied on Defendants' representations, nor does it allege *why* Plaintiff would have acted differently without those representations").

### 4.  Rule 23(b)(2) Certification

At argument, plaintiffs stated for the first time—in stark contrast to the relief sought in their complaints (and their briefs)—that injunctive relief under Rule 23(b)(2) is more important to them than damages, although they still seek damages.  They also disclosed, for the first time, that they are seeking restitution via these (b)(2) classes.  Recent authority defeats these new arguments for (b)(2) certification. *See Hartman v. United Bank Card Inc.*, No. C11-1753JLR, 2012 WL 4758052, at *15 n. 13 (W.D. Wash. Oct. 4, 2012) (declining to consider certification of injunction-only (b)(2) class where plaintiffs had previously represented that they would seek both injunctive and monetary relief).

*First*, as defendants have already indicated, the Supreme Court held unanimously in *Dukes* that a (b)(2) class may not be certified where a plaintiff's complaint seeks non-incidental monetary relief.  *Dukes*, 131 S. Ct. at 2557.  Justice Ginsburg's concurrence emphasized that where a complaint seeks both damages and injunctive relief, the only appropriate course is to determine whether class-wide injunctive relief is available via a *(b)(3)* class.  *Id.* at 2561.  The Second Circuit very recently acknowledged the same in *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. Aug. 17, 2012), holding that "[a]bsent class members have a due process right to notice and an opportunity to opt out … when the action is 'predominantly' for money damages … [and] also when a claim for money damages is more than 'incidental.'"  Likewise, just last week, in a case in which plaintiff had sought both actual and statutory damages, a court held that "[c]ertification under Rule 23(b)(2) is not appropriate where there are claims for monetary relief."  *Evans & Green, LLP v. That's Great News, LLC*, 11-3340-CV, 2012 WL 4888471, at *4 (W.D. Mo. Oct. 15, 2012).  Unambiguously, the test does not turn on the nature of the relief plaintiff says he is seeking while litigating his class certification motion, or the nature of the relief a later trial court might consider after trial on the merits, but rather, emphatically, on the nature of the claim asserted *in the complaint*.  *See Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26, 29 (2d Cir.2012) ("a class complaint alleging numerous individual claims for monetary relief may not be certified under Rule 23(b)(2), 'at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief'").  The Court must conduct this inquiry at the class certification state—not later.

Thus, where a plaintiff files a complaint seeking non-incidental monetary relief (as here), a court may not certify a (b)(2) class at all — and it certainly may not do so without first determining that the requirements of Rule 23(b)(3) are met. The two cases upon which plaintiffs relied at argument—*Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167 (S.D.N.Y. 2011) and *Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012)—


www.shb.com

are not to the contrary.  In those cases, the plaintiffs *had* satisfied the requirements of (b)(3).  As such, Rule 23(b)(2) was not being used as an end-run around the due process requirements of Rule 23(b)(3).[6]  By contrast, plaintiffs here erroneously contend that they can obtain certification of a (b)(2) class even if they are unable to prevail under (b)(3).  That is not permissible.

*Second*, in any event, plaintiffs revealed for the first time during the class certification hearing that they are seeking non-incidental monetary relief *within* (b)(2), in the form of restitution.  Tr. 153.  Although Mr. Reese argued during the hearing that restitution is merely an equitable remedy (Tr. at 8, 17-19, 21, 147, 154), *Dukes* held that *any* non-incidental monetary remedy—whether legal or equitable—bars (b)(2) certification:

> [R]espondents argue that their backpay claims are appropriate for a (b)(2) class action because a backpay award is equitable in nature. The latter may be true, but is irrelevant. The Rule does not speak of "equitable" remedies generally but of injunctions and declaratory judgments.

*Dukes*, 131 S. Ct. at 2560.  Indeed, the Second Circuit recently extended *Dukes'* holding to claims for disgorgement — similar to plaintiffs' claims for restitution here — vacating a district court's order certifying a class under 23(b)(2) because such claims necessarily require the trial court to "determine the separate monetary recoveries to which individual plaintiffs are entitled from the funds disgorged," thereby "requir[ing] the type of non-incidental, individualized proceedings for monetary awards that *Wal–Mart* rejected under Rule 23(b)(2)."  *Nationwide*, 460 Fed. Appx. at 29; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (reversing Rule 23(b)(2) certification, finding district court erred by focusing on evidence of plaintiffs' subjective intent that their primary objective was to obtain injunctive relief, rather than whether monetary relief could be granted "absent individualized determinations…"); *Penn. Chiropractic Assoc., v. Blue Cross Blue Shield Assoc.*, No. 09 C 5619, 2012 WL 4866494, at *24 (N.D. Ill. Oct. 12, 2012) (rejecting Rule 23(b)(2) class because plaintiffs sought individual monetary relief that would depend on "subjective differences of each class member's circumstances").  The same is true here.[7]

---

[6]   As Judge Posner recently held, where a complaint seeks injunctive and monetary relief, the "proper approach" is to "seek class certification under Rule 23(b)(3)—which requires full notice so that class members can opt out if they want to bring an independent suit for damages or other monetary relief—but to ask for *injunctive as well as monetary relief*" as part of that (b)(3) class.  *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) (emphasis added) .  Otherwise, "plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protection." *Id.* at 825 (observing that "[t]he incentives to do so are large….").

[7]   Although California law does not control, restitution is an individualized remedy there as well. *See Aho v. AmeriCredit Fin. Servs., Inc.* 277 F.R.D. 609, 619 (S.D.Cal. 2011) ("the restitutionary relief sought by the class is not incidental to the injunctive and declaratory relief, [because] each class member …

5



Shook,
Hardy&
Bacon L.L.P.
www.shb.com

Plaintiffs appear to recognize the problems individualized determinations would pose for (b)(2) certification, as shown by their suggestion that the Court could avoid them at least for the GBL claims by simply seeking the minimum statutory damages of $50 for all class members.[8]  *See* Tr. at 72, 79-80 (noting that GBL allows greater of actual damages or $50).  But that would be an arbitrary number not linked to the named plaintiff or any class member's harm (if any),[9] which hardly addresses the concerns expressed in *Dukes*.  Rather, plaintiffs' proposal highlights one risk of using (b)(2) expansively—the "perverse incentives" that class representatives have "to place at risk potentially valid claims for monetary relief" in an effort to gain (b)(2) certification.  *Dukes,* 131 S. Ct. at 2559.  Just as the named plaintiffs in *Dukes* declined to include compensatory damage claims hoping that injunctive relief would therefore "predominate," here class counsel's

paid a different sum, and thus would be entitled to an 'individualized award.' While … individualized proof would be required only as to the amount of the individual award, certification is nevertheless appropriately sought under Rule 23(b)(3) and not under Rule 23(b)(2).") (citation omitted); *see also Plaisted v. Dress Barn, Inc*., 2012 WL 4356158, at *2 (C.D.Cal. Sept. 20, 2012) (discussing "individualized restitution calculations" required under the UCL); *In re Google AdWords Litig*., No. 5:08-CV-3369 EJD, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012) ("Since the purpose of restitution is to return class members to status quo, the amount of restitution due must account for the benefits received...."); *In re Yasmin,* 2012 WL 865041, at *23 (holding as a matter of California law that the "proper measure of restitution [is] the difference between what the plaintiff paid and what the plaintiff received," requiring individual inquiry as to comparable products for each class member); *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009) (reaffirming "prohibition against nonrestitutionary disgorgement," pursuant to which disgorged funds must be returned to individual class members).  Indeed, the need for individualized damages determinations is also fatal to certification under Rule 23(b)(3) because it defeats commonality, as a Court held just yesterday.  *See Epps v. JPMorgan Chase Bank N.A.,* No. 10-1504, slip op. at 21-23 (D. Md. Oct. 22, 2012).

[8] The availability of statutory damages does not alter the Court's analysis for determining whether a class seeking monetary damages can be properly certified under Rule 23(b)(2). *See Hartman*, 2012 WL 4758052, at *14-15 (denying 23(b)(2) certification because statutory damages were not "incidental" where plaintiffs refused to disavow possible claims for actual damages and where individualized proof was necessary to determine which class members qualified for statutory damages).

[9] Class counsel's proposal to cap damages at $50 would likely limit even Ms. Ackerman from pursuing her full damages. She testified that she purchased approximately one to two bottles of vitaminwater per week for almost one year and an additional six bottles per month for her daughter. *See* Ackerman Tr. 28:1-20 (Ex. C). Likewise, the remaining class representatives' testimonies further indicate that many New York residents will also likely be precluded from seeking their full damages. For example, prior to moving to Illinois, Plaintiff Khaleel lived in New York from 2005 to 2008. While he is not seeking damages for his New York purchases, Khaleel testified that he purchased approximately 250 bottles of vitaminwater per year from 2005 to 2008. *Khaleel* Tr. at 16:16-17:23 (Ex. D); *see also* Antonov Tr. at 23:15-25:7, 40:7-10 (purchased approximately four to eight bottles per month from 2006 to 2009) (Ex. E); Armada Tr. 15:22-16:9, 31:9-32:16 (purchased approximately four to five bottles during the week and additional bottles on the weekend for eight months) (Ex. F); Cook Tr. at 70:3-12 (purchased one to two bottles three times per week, for almost one year) (Ex. G); Ford Tr. at 47:1-24 (purchased multiple bottles and cases (twelve bottles) of vitaminwater per month) (Ex. H); Koh Tr. at 34:5-22 (purchased at least five bottles per month from October 2007 to around July 2008) (Ex. I); Squiabro Tr. at 10:19-21, 14-6-21 (purchased cases every three or four days from 2008 to the middle of 2010) (Ex. J).

6



suggestion would impose a $50 cap on some class members' recovery for essentially the same purpose that *Dukes* rejected as improper. The proposal would award money to some people not entitled to any (violating Defendants' due-process rights), while denying those who may have larger claims the right to opt out. Plaintiffs have the burden to prove, by a preponderance of the evidence, that their proposed 23(b)(2) class does not violate absent class members' due process rights or those of defendants. Plaintiffs here cannot do so.

Accordingly, and because plaintiffs have submitted *no evidence* as required by *Dukes*, and scarcely addressed their own clients' deposition testimony during the Oct 11 hearing, class certification under Rule 23(b)(2) or otherwise must be denied. Indeed, plaintiffs' counsel repeatedly contradicted themselves on matters as basic as the misrepresentations on which they are seeking certification: Mr. Reese, for his part, stated that "the" common issue is whether "the name itself, vitaminwater, is deceptive" (Tr. 8:25-9:3), and rejected defendants' arguments relating to "all [the] different misrepresentations" alleged in the complaint, assuring the Court that "the case is going to be about this one misrepresentation . . . the name itself, Vitaminwater" (*id.* 20:5-10). But in direct contrast, Mr. Gardner stated that plaintiffs are "not abandoning all the other advertising" but merely "focusing a spotlight" on the name vitaminwater (*id.* 164:20-23), such that they are requesting certification as to *each* of the dozen misrepresentations alleged in the various complaints and discussed in Judge Gleeson's decision. Both cannot be true, and absent a clear explanation of the relief that plaintiffs seek, and the purportedly supporting evidence, certification must be denied.

## 5.   Additional Post-*Dukes* Labeling/Advertising Cases

In answer to Your Honor's question (Tr. 32-35), the Northern District of Illinois recently denied a motion for class certification under Rules 23(b)(3) and (b)(2), after finding that the plaintiff's proposed class was overly broad and not ascertainable. *Korsmo v. Am. Honda Motor Co.*, No. 11 C 1176, 2012 WL 1655969 (N.D. Ill. May 10, 2012).[10]   Plaintiff's complaint, which included claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and unjust enrichment, alleged that Honda misled and caused consumers to pay more than they would have absent Honda's misrepresentations. *Id.* at *2. While finding that the only issue in dispute was whether the label, "Honda Certified Used Car," deceived purchasers and thereby caused them injury, *id.* at *6, the court rejected plaintiff's argument that they could presume people relied on that label in purchasing their cars. The court determined that the plaintiffs proffered no evidence showing that buyers of such cars mistakenly believed that the warranty included a certification as to vehicle conditions at the time of purchase, such that a presumption of reliance was appropriate. *Id.* at *5. The court denied certification because individual inquiries would be necessary to determine each buyer's motivations

---

[10] A courtesy copy of this opinion is attached as Exhibit B.



for buying a "Honda Certified Used Car" and which buyers, if any, were deceived by that phrase on the label:

> It is highly likely that many proposed class members paid more for their cars, not because they believed they were getting a "manufacturer certified" vehicle, but instead based on the actual benefits of the Program as advertised, including dealer screening, inspection, reconditioning, maintenance, and certification, and the protections of the Warranty as written.   Since Plaintiff's Rule 23(b)(3) proposed classes include consumers who were not deceived and suffered no harm, the proposed classes are not sufficiently definite to warrant class certification of the ICFA claim or the unjust enrichment claim.

*Id.* at *5.  Further, the court found that individual questions of fact predominated, because "each class members' understanding" – as to the meaning of the phrase, "Honda Certified Used Car" – was essential to establishing their claim.  *Id.* at *7.  The court also held that plaintiff's proposed injunctive class was not appropriate for certification under Rule 23(b)(2) because the relief sought related predominantly to money damages.  *Id.* at *8.

While not labeling decisions, two recent decisions denied class certification because of the individual issues that arise from the varying exposure of class members to information that would nullify any alleged misrepresentations, such as the indisputably accurate and detailed ingredient information included on vitaminwater labels.  Thus, in *In re Ford Motor Co. E-350 Prods. Liab. Litig. (No. II)*, Civ. No. 03-4558, 2012 WL 379944 (D.N.J. Feb. 6, 2012), the court denied certification of GBL § 349 claims after finding that "the numerous public reports, articles and broadcasts concerning the [alleged] handling problems" undermined common proof of causation.  *Id.* at *15.  Likewise, in *In re Yasmin*, the court denied certification of a California CLRA claim after finding that evidence of doctors' clarifying statements defeated a presumption of classwide reliance.  2012 WL 865041, at *3, 20, 24-26.  Of course, the presence of such information here further distinguishes this case from the *AirShield* cases relied upon by plaintiffs.

### 6.    Relevance and Reliability Of Defendants' Expert Reports

In response to the Court's question (Tr. 29:1-10), recent authority confirms that expert reports including surveys are properly offered and considered at class certification, including after *Dukes*.  *See Marcus v. BMW of N. Am., LLC* 687 F.3d 583, 602-03 (3d Cir. 2012) (plaintiff relied on survey evidence); *Nafar v. Hollywood Tanning Sys, Inc*., 339 Fed. Appx. 216, 218 (3d Cir. 2009) (plaintiff and defendant surveys); *Edwards v. Ford Motor Co.*, No. 11-CV-1058, 2012 WL 2866424, at*9 (S.D. Cal. June 12, 2012) (reasonable consumer standard could not be applied on class-wide basis because expert showed purchasing decisions varied from consumer to consumer).  Indeed, in seeking discovery, plaintiffs here expressly argued that surveys are relevant to class certification.



*See* Tr., Jan. 20, 2012 (Ms. Clark-Weintraub: "[A]s Mr. Reese said, if there's a consumer perception survey sitting in Coke's file . . . that's obviously useful evidence we can use to show predominance and typicality at the class certification stage.").  Here, the detailed expert and survey evidence offered by defendants, as well as the *complete lack of any evidence* offered by plaintiffs, should and must be considered when deciding class certification.

Moreover, at Your Honor's request (Tr. 107:11-21), defendants respond as follows to plaintiffs' assertions – made for the first time during argument – concerning the reliability of Dr. Ugone's report:

*First*, Dr. Ugone properly used SoBe Lifewater as a benchmark in analyzing price variations and premiums.  He did so after conducting his own research and consulting with The Coca-Cola Company,[11] and his report (p. 44) details his multiple justifications for that decision.  Indeed, the comparison is so close that the maker of vitaminwater sued SoBe Lifewater for trade dress infringement in 2006, following which SoBe changed its trade dress.  *Id.* at 45 n. 130 & Ex. X.  Even if Lifewater were an improper benchmark, Dr. Ugone testified that his ultimate opinion would not change.  Ugone Dep. Tr. 97:22-100:1.

*Second,* Dr. Ugone properly used Microsoft Excel in preparing his report.  Specifically, he used the software to execute formulas that plaintiffs concede were appropriate.  *See Watkins v. Vestil Mfg. Corp.*, No. 2:07-CV-0152, 2010 WL 883754, at *2 (N.D. Ga. Mar. 5, 2010) (admitting Excel-based expert testimony because opponent did not challenge formulas or methodology).

*Third*, plaintiffs' mischaracterization of Dr. Ugone's methodology and previous work as "cookie cutter" is an empty retort to his persuasive analysis in *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).  In *Snapple,* Dr. Ugone's report survived a *Daubert* motion (including as to its benchmarking analysis), and the court heavily relied on it in finding a lack of common proof of causation and damages, fatal to certification.[12]  *Id.* at *9 n.17.  The same should follow here.

---

[11] "[W]e had familiarized ourselves with the products that were out there [and] … weren't surprised when he said SoBe Lifewater … We suspected that that was the answer.  But ultimately I was willing to defer to the guidance provided by someone knowledgeable … that deals with these issues every day and is in the industry."  Ugone Tr. at 95:9-19.

[12] To avoid any doubt, Defendants emphasize that *Snapple* did not depend on whether the proposed class definition included "consumers" versus "residents", but rather rested on the Court's concern that, on any definition, "plaintiffs ha[d] not proposed a suitable methodology for establishing . . . causation and injury on a class-wide basis."*Weiner*, 2010 WL 3119452, at *6.



Shook,
Hardy &
Bacon L.L.P.
www.shb.com

7.       **Viability Of Ohio Claims**

Although defendants have previously briefed the viability of plaintiff's CSPA and DTPA claims (Ohio Opp. at 14, 17-20), we provide additional discussion at the Court's request (Tr. 95:23 - 98:4):

*Defendants Have Not Received Prior Notice As Required By The CSPA***.**  The CSPA permits a class action "only when a [defendant] acted in the face of prior notice that its conduct was deceptive or unconscionable." *Marrone v. Philip Morris USA*, 850 N.E.2d 31, 34 (2006).  Two points bear note beyond those discussed in defendants' brief:

*First,* recent authority confirms that prior notice must be alleged in a plaintiff's complaint — not a subsequent brief.  *In re Porsche Cars N. Am., Inc*., -- F. Supp. 2d ---, No. 2:11-md-2233, 2012 WL 2953651, at *58 (S.D. Ohio July 19, 2012) (granting motion to dismiss CSPA claim (*citing Johnson v. Microsoft Corp*., 802 N.E.2d 712, ¶ 20 (Ohio Ct. App. 2003)).  Here, Mr. Volz's complaint did not allege notice.  Nor did his opening class certification brief.  It was not until Mr. Volz's *reply* brief that he tried, too late, to assert prior notice.

*Second,* the two cases cited in Mr. Volz's reply brief do not in any event demonstrate prior notice.  The first, *Brown v. American Health Institute,* was rebutted in defendants' opposition brief at pages 19-20.  As for *Cordray v. The Dannon Company*, Franklin Cty. Common Pleas Court, No. 10 12-18225, Ohio Atty. Gen. P.I.F. No. 10002919 (Dec. 22, 2010), this case was cited for the first time in Mr. Volz's reply brief but – surprisingly – is not mentioned at all in the supplemental brief that Mr. Volz submitted today. It therefore appears that Mr. Volz has abandoned any reliance on *Dannon* as purportedly providing prior notice under the CSPA. Rightly so:

- *Dannon* is not *prior* notice because it was issued in December 2010 — *after* defendants began marketing vitaminwater, *after* Mr. Volz started and stopped buying it, and *after* he filed his complaint.  *See* Volz Dep. Tr. 75:8-77:1; *Savett v. Whirlpool Corp*., 12-cv-310, 2012 WL 3780451, at *4 (N.D. Ohio 2012) (holding that *Dannon* could not provide prior notice under the CSPA because it "postdate[d] the purchase of the washing machine at issue[,]" whereas "[t]he statute clearly indicates that the transaction must occur 'after the decision…'").

- *Dannon* is an unreasoned consent judgment—not the decision of a court—and hence cannot supply CSPA notice as a matter of law.  *See* Defs.' Ohio Br. 19-20.

- *Dannon* did not involve conduct substantially similar to that alleged here.  It concerned a clear "clinically proven" claim which consumers were powerless to verify—a far cry from the name "vitaminwater," which plaintiffs contend was ambiguous, which consumers could check against the nutrition facts, and which appeared on a beverage rather than a yogurt product sold as a dietary supplement.

10



Shook,
Hardy &
Bacon L.L.P.
www.shb.com

In the absence of prior notice, class certification must be denied on the CSPA claim.

*Consumers Lack DTPA Standing*.   The DTPA "governs conduct between commercial entities, not between a commercial entity and a consumer." *Glassner v. R.J. Reynolds Tobacco Co.*, No. 5:99CV0796, 1999 WL 33591006 (N.D. Ohio June 29, 1999); *see Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at * 4 (Ohio App. 8 Dist. Mar. 16, 2006) (no standing because plaintiff "was not a … commercial entity"). Accordingly, courts routinely dismiss consumer DTPA claims—including six times in 2012 alone, one of which was in the Eastern District of New York.[13]   The same is required here.

As *Dawson* noted, the rule against DTPA consumer standing is confirmed by the equivalent federal Lanham Act, which Ohio courts must consider when construing the DTPA,[14] and which clearly bars consumer suits.[15]   *Dawson*, 2006 WL 1061769, at * 4. Indeed, the Lanham Act was enacted "virtually without regard for the interests of consumers generally, and almost certainly without any consideration of consumer rights of action in particular." *Id.*This Court should follow Ohio appellate courts (*Dawson* is the most recent), every federal circuit court to consider the issue as to the Lanham Act, and numerous federal district courts, and exclude "mere consumers" from a statute directed at "commercial parties." *PPX Enters. v. Audiofidelity,Inc.,* 746 F.2d 120, 124 (2d Cir. 1984).

---

[13]   *See Savett,* 2012 WL 3780451, *6 (N.D. Ohio Aug. 31, 2012) (dismissal following plaintiff's concession); *Holbrook v. Louisiana-Pacific Corp.*  No. 3:12-cv-484, 2012 WL 3801725, *5 (N.D. Ohio Aug. 29, 2012) (dismissal); *In re Porsche Cars N. Am., Inc.,* -- F. Supp. 2d ---, No. 2:11-md-2233, 2012 WL 2953651, at *64 (S.D. Ohio July 19, 2012) ("individual consumers lack standing"); *Gascho v. Global Fitness Holdings, LLC*, --- F. Supp. 2d ----, No. 2:11-cv-00436, 2012 WL 1048823, at *19 (S.D. Ohio Mar. 28, 2012) ("DTPA addresses commercial injury, and not consumer injury"); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *14 (E.D.N.Y. Mar. 5, 2012) (DTPA "does not confer a private right of action on consumers"); *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 649 (N.D. Ohio 2012) (same);  *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359448, at *17 (N.D. Ohio Nov. 17, 2006) (DTPA "only applies between commercial entities."); *Chamberlain v. Am. Tobacco Co.*, No. 1:96-CV-02005-PAG, 1999 WL 33994451, at * 18 (N.D. Ohio Nov. 19, 1999) ("[P]lain language … indicates that [DTPA] applies between business[es]….").

[14]   *See Chandler & Assoc. v. America's Healthcare Alliance, Inc.*, 709 N.E.2d 190, 195 (Ohio Ct. App. 1997) ("[w]hen adjudicating [DTPA claims], Ohio courts shall apply the same analysis applicable … under analogous federal law"); *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 698 (6th Cir. 2003) (Lanham Act and DTPA are "equivalent").

[15]   *See Dawson,* 2006 WL 1061769, at * 4 ("at least half of the circuits hold (and none … disagree) that … the Lanham Act … bars a consumer from suing").  Circuit court decisions holding that consumers lack Lanham Act standing include *Made in the USA Found. v. Phillips Foods, Inc*., 365 F.3d 278, 279 (4th Cir. 2004); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 561 (5th Cir. 2001); *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 229 (3d Cir. 1998); *Stanfield v. Osborne Indus.*, 52 F.3d 867, 873 (10th Cir. 1995); *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995); *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989); and *Colligan v. Activities Club of NY*, 442 F.2d 686, 691-92 (2d Cir. 1971).



In opposition, plaintiff has cited the one contrary federal decision. *Bower v. Int'l Bus. Machines, Inc.,* 495 F. Supp. 2d 837, 842-43 (S.D. Ohio. 2007).[16]  *Bower* is an outlier.  Its analysis contradicts every published decision; it was expressly rejected by an Ohio state court in *Blankenship* and by federal courts in *Gascho, Robins, Holbrook,* and *Porsche*; and it has never been adopted by any court.  Indeed, whereas *Bower* purportedly relied on the "plain language" of the DTPA, *Chamberlain* held that "the plain language of the [DTPA] indicates that it applies [only] between business or commercial entities." *Id.* at *18; *see also McKinney,* 2010 WL 3834327, at *15 (no consumer standing under the Lanham Act even though "the same linguistic issue [addressed in] *Bower* is present in the Lanham Act").   Rather than deviate from the Ohio cases, *Bower* should have "attempt[ed] to predict what the [Ohio] Supreme Court would do [by reference to] decisions of the [Ohio] Court of Appeals … and the rules adopted by other jurisdictions." *Mazur v. Young,* 507 F.3d 1013, 1016-17 (6th Cir. 2007).  Those authorities, which *Bower* did not consider, all held that consumers lack standing, as discussed in *Dawson* (the only Ohio appellate court to consider the issue) and *Blankenship* (the most recent Ohio state court to do so).

**The Other Ohio Claims Fail**.  It is relevant that the other Ohio claims also fail on the pleadings.  *First*, unjust enrichment fails because Mr. Volz transacted with retailers rather than defendants.  *Savett*, 2012 WL 3780451, *7 (dismissing consumer unjust enrichment claim because "[u]nder Ohio law, indirect purchasers may not assert unjust enrichment claims").[17]   *Second*, promissory estoppel fails because Mr. Volz did not allege "an intention to do or refrain from doing something in the future." *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Oh. Ct. App. 2008) (characterizations were "not enforceable promise[s], but rather misrepresentations of . . . fact"); *Ford Motor Credit v. Ryan,* 939 N.E.2d 891, 921 (Ohio Ct. App. 2010) ("misrepresentation [is] not a promise").   *Third*, "[t]he Ohio Supreme Court is unequivocal that negligent

---

[16]   An Ohio state trial court came to a similar conclusion in an unpublished decision that did not mention the Court of Appeal's contrary holding in *Dawson* and has never since been cited. *Cowit v. Cellco P'ship*, No. A0505869, 2006 WL 6346827, at *8 (Hamilton Co. July 20, 2006).  The later appellate decision in *Cowit*, cited by Mr. Volz, did not discuss DTPA standing and it appears that the issue was not raised. 911 N.E.2d 300 (Ohio Ct. App. 2009).  Likewise, *Ritt v. Billy Blanks Enters.,* 870 N.E.2d 212 (Ohio Ct. App. 2007), previously cited by Mr. Volz, does not address the DTPA standing issue at all. The remaining cases cited at page 3 of Mr. Volz's supplemental brief similarly did not address or consider the DTPA consumer standing issue, and hence are of no import.

[17]   *See also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952-53 (N.D. Ohio 2009) (because "neither Plaintiff … purchased [directly] from Whirlpool . . . [they] are left only with the 'chain-of-sale' argument that [is] contrary to Ohio law."); *Hoffer v. Cooper Wiring Devices, Inc.* 2007 WL 1725317, at *4 (N.D. Ohio June 13, 2007) (unjust enrichment requires "an economic transaction . . . between the parties[,]" and "Ohio courts have not . . . held that purchase of products within a chain of sale is sufficient. . ."); *Bower,* 495 F. Supp. 2d at 844 (dismissing unjust enrichment claims because plaintiffs did not "allege[] that they ever paid money directly to IBM" or that they "purchased the [drives] directly from IBM"); *Johnson,* 834 N.E.2d at 799 (unjust enrichment claims properly dismissed because "no economic transaction occurred between [consumer] and Microsoft . . . .").

12


Shook,
Hardy &
Bacon L.L.P.
www.shb.com

misrepresentation is a business tort related to professional malpractice," and may not be "expand[ed] . . . into the realm of simple consumer transactions." *Thornton v. State Farm Mut. Auto Ins. Co., Inc.*, No. 1:06-cv-00018, 2006 WL 3359448, at *16 (N.D. Ohio Nov. 17, 2006).[18]

      For all of these reasons, the purported Ohio class cannot be certified.

*    *    *

      We appreciate the Court's continuing time and attention.

Respectfully,

---

[18]   Indeed, a "core requirement" of negligent misrepresentation is a "special relationship," under which "the defendant supplied information . . . for the [plaintiff's] guidance in its business transaction." *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006); *see Picker Int'l v. Mayo Foundation*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (same, citing *Gutter v. Dow Jones Inc.*, 490 N.E.2d 898, 900 (Ohio 1986). Such a special relationship is typically limited to "attorneys, surveyors, abstractors of title," and the like. *Hamilton v. Sysco Food Servs. of Cleveland, Inc.,* 866 N.E.2d 559, 562 (Ohio Ct. App. 2006).

13

240389 v3