# REESE RICHMAN LLP

November 21, 2012

**VIA ECF**
Hon. Robert M. Levy
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    **Re:**    *In re: Glaceau Vitaminwater Litig.*, **Case No. 1:11-md-02215-DLI-RML**

Dear Judge Levy:

    Plaintiffs respectfully submit this letter in response to Defendants' supplemental briefing filed on October 24, 2012 ("Def. Supp. Br.").

    As an initial matter, Plaintiffs reiterate their position that Defendants' Supplemental Briefing should be struck from the record because it impermissibly violates this Court's request for additional information on very limited issues (namely whether to proceed as an MDL and Ohio law).

    Nonetheless, even if Defendants' Supplemental Briefing were considered in its entirety, it does nothing to defeat Plaintiffs' Motion for Class Certification. Rather, it underscores why a class should be certified.

    For example, when asked at the hearing to name a single labeling case that has not been certified, Defendants could not. And in its Supplemental Briefing, Defendants again fail to cite a single labeling case where a class has not been certified. As stated in Plaintiffs' class certification briefing, and as repeated at the hearing (along with visual aides of the food packaging itself in the food labeling cases that have been certified), every single labeling case has resulted in the certification of a class. *See e.g., In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, MDL No. 2199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (certifying class of pomegranate juice purchasers); *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067CAS(JCx), CV 11-5465CAS(JCx), 2012 WL 1616912, at *13 (C.D. Cal. May 7, 2012) (certifying class of hair product purchasers); *Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 532 (C.D. Cal. Nov 14, 2011) (certifying class of dietary supplement purchasers); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011) (certifying class of shelled walnut purchasers); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 289 (C.D. Cal. 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 368 (N.D. Cal. 2010) (certifying class of beverage purchasers).

    Just as in these food labeling cases, a class should also be certified here.

875 Avenue of the Americas • Eighteenth Floor • New York, NY 10001
www.ReeseRichman.com • Phone: 212.687.8291 • Fax: 212.687.8292

## REESE RICHMAN LLP

Furthermore, the most recent appellate decision on class certification – *Butler v. Sears, Roebuck and Co.*, No. 11-8029, 2012 WL 5476831 (7th Cir. Nov. 13, 2012) - underscores why a class should be certified here. In *Butler*, the Seventh Circuit reversed the lower court's denial of class certification. The Seventh Circuit stated that in a Rule 23(b)(3) class action the question presented for the court's determination is as follows:

> Is it more efficient, in terms of both economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?

*Id.* at * 2. And despite the fact that the case before it raised issues of individualized damages, the Seventh Circuit held that the classes should be certified, stating:

> A class action is the more efficient procedure for determining liability and damages in a case such as this involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of individual suit. If necessary, a determination of liability could be followed by individual hearings to determine the damages sustained by each class member…The class action procedure would be efficient not only in cost, but also in efficacy, if we are right that the stakes in an individual case would be too small to justify the expense of suing, in which event denial of class certification would preclude any relief.

*Id.*

Here, just as in *Butler* (and the numerous food labeling cases cited above), Plaintiffs' motion for class certification should now be granted.

Each of Defendants' points in their Supplemental Brief is now addressed in turn.

### 1.   Continued Progress As An MDL

The undersigned counsel, which represents Plaintiffs in the *Ackerman* case filed in this district, takes no position concerning whether the above-referenced action should remain before this Court as an MDL. If any other plaintiffs' counsel takes a position on this issue, that counsel will so inform the Court.

### 2.   Summary Judgment In Lieu Of Class Certification

The Court required the consent of both sides to litigate summary judgment on the merits prior to class certification (Tr. at 189:10-11). Defendants' refusal to consent resolves this issue. (Def. Supplemental Brief at 1: "defendants do not consent to litigating summary judgment").

Not content to simply state their position, however, Defendants have used the Court's inquiry as an excuse to submit further argument on an issue that they addressed in a single sentence in their master opposition brief — *i.e.*, that Plaintiffs supposedly lack standing to seek to enjoin Defendants from falsely labeling and marketing vitaminwater because Plaintiffs are now aware of

# REESE RICHMAN LLP

Defendants' misconduct.[1]  However, as Plaintiffs explained in their master reply brief,[2] if the threshold for seeking injunctive relief in federal court was viewed as narrowly as urged by Defendants, actions in federal court under state consumer protection laws to enjoin false advertising would be barred because no plaintiff would ever have standing.  This clearly is not the rule as such cases are routinely litigated in federal court.[3]

The case of *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011) is directly on point.  In *Henderson,* plaintiffs contended that the defendant had made misleading statements on the label of its guacamole dip.  The defendant in the *Henderson* case made the same argument that Defendants make here regarding injunctive relief.  The court rejected the argument, stating that:

> ***If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates***, federal courts would be precluded from enjoining false advertising under California consumer protection laws because ***a plaintiff who had been injured*** would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and ***would never have Article III standing***.
>
> ***While Plaintiffs may not purchase the same Gruma products*** as they purchased during the class period, ***because they are now aware of the true content*** of the products, ***to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws.***  That objective is "to protect both consumers *and competitors* by promoting fair competition in commercial markets for goods and services."  Defendant has not presented evidence or even alleged that it has removed its allegedly misleading advertising from its products.  With such advertising remaining on supermarket shelves, Plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising.

*Henderson*, 2011 WL 1362188, at *7-8 (emphasis added).

---

[1] In their reply brief, the following sentence constituted the totality of Defendants' argument with respect to this issue: "[B]ecause the named plaintiffs are now aware of vitaminwater's sugar content and have stopped drinking it, monetary damages is their only meaningful remedy."  Doc. 92, Def. Brf. at 34.

[2] *See* Doc. 113, Pltff. Reply Br. at 18-20.

[3] *See*, *e.g.*, *Cabral v. Supple, LLC*, No. EDCV 12–00085–MWF (OPx), 2012 WL 4343867, at *2 (C.D. Cal. Sept. 19, 2012) (rejecting argument that there was no threat of future injury while mislabeled products remained on store shelves); *Larson v. Trader Joe's Co.*, No. C 11–05188 SI, 2012 WL 5458396, at *3-4 (Jun. 14, 2012); *Stinson v. City of New York*, No. 10 Civ. 4228(RWS), 2012 WL 1450553 (S.D.N.Y. Apr. 23, 2012); *Henderson v. Gruma Corp.*, No. CV 10–04173 AHM (AJWx), 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009).

# REESE RICHMAN LLP

Moreover, Defendants' argument confuses Article III standing and the remedies available to a consumer injured by a violation of California or New York's consumer deception law. As the Supreme Court has instructed, "the irreducible constitutional minimum of standing contains three elements: (i) a concrete and particularized injury in fact; (ii) a causal connection between the injury and the conduct complained of; and (iii) that the injury will be redressed by a favorable decision."[4] Plaintiffs in this case have plainly suffered an injury in fact caused by Defendants' misconduct that is redressable in this litigation because they are out-of-pocket for the money they for Defendants' deceptively labeled vitaminwater. This suffices to establish Article III standing.

The question then becomes what remedies the statutes in question provide to a successful plaintiff, and both California's Unfair Competition Law ("UCL") and New York's General Business Law ("GBL") provide that a prevailing consumer may "seek an injunction against the offending business practice."[5] As seen from the very language of the statutes themselves, injunctive relief is available to a consumer under these statutes. *See* California Business & Professions Code § 17200 (UCL); § 17500 (FAL); Cal. Civ. Code §1750 (CLRA); and GBL § 349.

In any event, Defendants should be estopped from arguing that Plaintiffs lack standing to bring claims for injunctive relief because Plaintiff Antonov's entitlement to such relief was the predicate for Defendants' earlier motion to remove Mr. Antonov's case from California state court to federal court.[6] Even assuming *arguendo* that Defendants are correct and Plaintiffs do not have Article III standing to seek injunctive relief in federal court, which Plaintiffs dispute, if Mr. Antonov's case had not been removed to federal court by Defendants, there is no question that he would have been able to maintain an action for injunctive relief as the strictures of Article III would not apply in California state court, something Defendants' own authorities acknowledge.[7]

### 3. Choice Of Law

Defendants' "choice of law" argument fails because they have not identified a conflict between Second Circuit and Ninth Circuit law with respect to Plaintiffs' UCL claims. If Defendants are arguing that the California Class contains members who were not injured by Defendants' misconduct, they are wrong. ***All*** members of the California Class have suffered an injury-in-fact caused by Defendants' misconduct, which is redressable in this action because they purchased Defendants' deceptively labeled product.[8]

---

[4] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[5] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011); New York General Business Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice.").

[6] *See* Exhibit A.

[7] *See Laster v. T-Mobile USA, Inc.*, No. 05-CV-1167, 2009 WL 4842801, at *4 (S.D. Cal. Dec. 14, 2009) (recognizing that "Plaintiffs may have entirely viable state law [injunctive relief] claims in state court").

[8] *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) ("Each alleged class member was relieved of money in the transactions.").

# REESE RICHMAN LLP

As was the case in *Stearns*, Defendants' "real objection is that *state law* gives a right to 'monetary relief to a citizen suing under it' (restitution) without a more particularized proof of injury and causation. That is not enough to preclude *class standing* here."[9] In *Stearns*, the court observed that California's consumer protection law "keys on the representative party, not all of the class members, and has done so for many years," and instructed that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." As a result, the Ninth Circuit "consider[ed] only whether at least one named plaintiff satisfies the standing requirements."[10] Contrary to Defendants' contention, Second Circuit law is consistent on this point.[11] Accordingly, as there is no conflict between Second and Ninth Circuit law, this Court should look to existing California Supreme Court and Ninth Circuit authority in determining whether to certify Plaintiffs' UCL claims.[12]

### 4. Rule 23(b)(2) Certification

Defendants contend that "[a]t argument, plaintiffs stated *for the first time — in stark contrast to the relief sought in their complaints (and their briefs)* — that injunctive relief under Rule 23(b)(2) is more important to them than damages, although they still seek damages."[13] Defendants are wrong. Plaintiffs' briefs and Second Amended Class Action Complaint ("Complaint") demonstrate that oral argument was not the first time they took the position that injunctive relief was their primary objective. Indeed, injunctive relief is asked for in the claims as well as the Prayer for Relief in the Complaint. And Plaintiffs' master memorandum of law in support of their motion for class certification explicitly states that:

> [C]lass certification under Fed. R. Civ. P. 23(b)(2) is particularly appropriate here since *individual damages* are small and *are not the motivating factor behind this litigation.* In this regard, when asked what she was seeking to accomplish through her lawsuit, *Plaintiff Ackerman responded that her primary objective was to change the labels on vitaminwater.*"[14]

---

[9] *Id.* (emphasis added).

[10] *Id.*

[11] *See Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir.1994) ("For federal courts to have jurisdiction over any of these claims, only one named plaintiff need have standing with respect to each claim.").

[12] California law, unlike New York law, does not require proof that the Plaintiff paid a premium price. Defendants' contention that Plaintiff Ackerman maintains that she suffered an injury by purchasing a product she did not want is simply incorrect. Plaintiff Ackerman clearly stated (citing Judge Gleeson's prior decision in this matter) that injury can be shown by demonstrating that she paid a premium, something the research of Defendants' own expert, Stephen Swisdak, confirmed was the case. *See* Doc. 113, Pltff. Reply Br. at 3. Finally, Defendants' reliance on *Elias v. Hewlett-Packard Co.*, No. 12-cv-00421, 2012 WL 4857822 (N.D. Cal. Oct. 11, 2012) is misplaced. In *Elias*, the court granted a motion to dismiss UCL, FAL, and CLRA claims with leave to replead on the grounds that the plaintiff had not alleged reliance. In this case, Judge Gleeson rejected Defendants' argument that Plaintiffs had not adequately pled reliance with respect to their claims for violation of California law and this ruling is law of the case. *See Ackerman v. The Coca-Cola Co.*, No. CV-09-0395(JG)(RML), 2010 WL 2925955, at * 19 (E.D.N.Y. Jul. 21, 2010).

[13] Def. Supp. Br. at 4 (emphasis added).

[14] Doc. 71, Pltff. Mot. Br. at 16 (emphasis added).

# REESE RICHMAN LLP

As the above demonstrates, Defendants' arguments are premised on a fundamental misunderstanding of Plaintiffs' position, including a misreading of their briefing, the Complaint and the applicable law. Plaintiffs have not moved to certify a (b)(2) class seeking non-incidental monetary relief. Rather, Plaintiffs have moved to certify both (b)(2) and (b)(3) classes.[15]

However, assuming, *arguendo*, that this Court finds that Plaintiffs have failed to meet the requirements to certify a (b)(3) class (which it should not deny as the facts and law support a Rule 23(b)(3) certification here), Plaintiffs repeat that they seek to certify a Rule 23(b)(2) class for only injunctive, non-monetary relief.[16]

Tellingly, Defendants do not contest that an injunctive relief only class could be certified under Rule 23(b)(2). Nor could it, since all that Rule 23(b)(2) requires is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, that requirement is clearly met as Defendants have refused to change the labeling of it Product, and continue to this very day to call it by the misleading name "vitaminwater".

Instead, Defendants make the claim that "where a plaintiff files a complaint seeking non-incidental monetary relief (as here), a court may not certify a (b)(2) class at all — and it certainly may not do so without first determining that the requirements of Rule 23(b)(3) are met. … [P]laintiffs here erroneously contend that they can obtain certification of a (b)(2) class even if they are unable to prevail under (b)(3). That is not permissible."[17] That is not true. Indeed, at least three courts in the Second Circuit have rejected this contention.[18] As stated recently in *Sykes v. Mel Harris & Associates, LLC*, No. 09-cv-8486, 2012 WL 384802, *2 (S.D.N.Y. Sept. 4, 2012):

> That plaintiffs are seeking substantial monetary damages is of no concern given the Court's certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively.

*Id.* at *13.

---

[15] *See Stinson*, 2012 WL 1450553, at *21 (where a district court engages in the analysis required under Rule 23(b)(2) and Rule 23(b)(3), a class can be certified seeking both declaratory and injunctive relief as well as money damages); *Jermyn*, 256 F.R.D. 418, at 173–74 (same).

[16] Doc. 71, Pltff. Mot. Br. at 16; Doc. 113, Pltff. Reply Br. at 18.

[17] Def. Supp. Br. at 4–5.

[18] *See Sykes v. Mel Harris & Associates, LLC*, No. 09 Civ. 8486 (DC), 2012 WL 3834802 (S.D.N.Y. Sept. 4, 2012)); *Stinson v. City of New York*, No. 10 Civ. 4228(RWS), 2012 WL 1450553, at *21 (S.D.N.Y. Apr. 23, 2012); *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 173-74 (S.D.N.Y. 2011).

# REESE RICHMAN LLP

The cases relied upon by Defendants also do not help their argument either. For example, Defendants rely upon *Dukes* to claim that "a (b)(2) class may not be certified where a plaintiff's complaint seek non-incidental monetary relief." Def. Sup. Br. at 4. *Dukes* however, makes no such prohibition against seeking an injunctive relief class certification under Rule 23(b)(2) even if the initial complaint also sought monetary relief. Indeed, such a rule would be nonsensical (and easily circumvented) as it would simply result in the filing of an amended complaint or perhaps a new action on behalf of another plaintiff. Such proliferation of litigation is not what the Supreme Court sought in *Dukes* and indeed runs counter to the purpose of Rule 23. *Butler*, 2012 WL 5476831 at *2.

Second, in *Dukes*, Plaintiffs sought monetary damages, namely back wages, under the guise of injunctive relief under Rule 23(b)(2). Here, in stark contrast, Plaintiffs seeks only non-monetary, injunctive relief under a Rule 23(b)(2) certification (*i.e.* an injunction prohibiting Defendants from using misleading advertising of its Products, such as the misleading name "vitaminwater").

Defendants' reliance on *Hartman v. United Bank Card Inc.*, *Hecht v. United Collection Bureau, Inc.* and *Nationwide Life Ins. Co. v. Haddock* are misplaced for the same reason, namely monetary relief was being sought under the guise of injunctive or declaratory relief for a class certified under Rule 23(b)(2).[19] Indeed, in the *Hartman* decision relied upon by Defendants here, the court noted that "***it may be possible for Plaintiffs to seek class certification under Rule 23(b)(2) of only their claim for injunctive relief***."[20] The *Hartman* plaintiffs, however, "[had] not raised [the possibility of a (b)(2) class pursuing only class-wide injunctive relief], and absent thorough briefing by the parties, the court decline[d] to consider and rule on this issue."[21] Here, by contrast, Plaintiffs have made clear that, primarily, they seek certification of a class pursuing class-wide injunctive relief and, moreover, that even if the Court declines to certify a (b)(3) class, Plaintiffs nonetheless seek to certify an injunctive class under (b)(2) that does not seek monetary relief.[22]

The cases Defendants cite in their supplemental brief are distinguishable from the case at bar. For example, in *Nationwide Life Ins. Co. v. Haddock*, the plaintiffs sought disgorgement of money in a case involving investments in mutual funds.[23] The Second Circuit vacated the lower court's order certifying a class under (b)(2) because:

> In the case at bar, if plaintiffs are ultimately successful in establishing Nationwide's liability on the disgorgement issue, the district court would then need to determine the separate monetary recoveries to which individual plaintiffs are entitled from the funds

---

[19] Def. Supp. Br. at 4 citing *Hartman v. United Bank Card Inc.*, No. C11-1753JLR, 2012 WL 4758052, at *4 (W.D. Wash. Oct. 4, 2012); *Hecht v. United Collection Bureau, Inc.* 691 F.3d 218 (2d Cir. Aug. 17, 2012); and, *Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26 (2d Circ. 2012)

[20] *Id.*, at *15 n. 13 (citing *In re Apple and AT & T iPad Unlimited Data Plan Litig.*, No. C–10–02553 RMW, 2012 WL 2428248, at *8 (N.D. Cal. June 26, 2012) ("[T]here appears to be no bar to plaintiff seeking certification under Rule 23(b)(2) of a class pursuing only class-wide injunctive relief, regardless of how other claims in this case are treated.")).

[21] *Id.*

[22] Doc. 71, Pltff. Mot. Br. at 16; Doc. 113, Pltff. Reply Br. at 18.

[23] *Nationwide*, 460 F. App'x at 28.

disgorged. This process would require the type of non-incidental, individualized proceedings for monetary awards that *Wal–Mart* rejected under Rule 23(b)(2).[24]

Here, Plaintiffs' requested injunctive relief (changing the label to remove misleading representations) has no monetary component.

### 5. Additional Post-*Dukes* Labeling/Advertising Cases

In Section 5 of their supplemental brief, Defendants purport to answer "Your Honor's question (Tr. 32-35)." On pages 32 through 35 of the hearing transcript, Your Honor raised three questions, none of which are answered by Defendants' supplemental briefing:

1) "[A]re there label cases that are analogous to this case where a court would more easily infer class wide reliance as opposed to cases involving advertising where people may or may not have seen the advertisements?"[25]

2) "[H]as there ever been a case like this one where the actual name of the product is something that the plaintiffs are alleging violates the statute?"[26]

3) "[W]hen the name of the product is what is alleged to be objectionable, is there a reason why that wouldn't make the class more cohesive or at least presumptively cohesive as opposed to other [bases]?"[27]

Rather than answer Your Honor's questions, Defendants discuss a case — *Korsmo v. American Honda Motor Co.*, No. 11 C 1176, 2012 WL 1655969 (N.D. Ill. May 10, 2012) — that is inapposite for several reasons. First, *Korsmo* did not involve a product *name* on a *label* that a buyer was necessarily exposed to and that was alleged to be misleading in itself. Rather, it involved various statements in advertising regarding Honda's "Certified Used Car" program.[28] Moreover, the plaintiff noted in his class certification briefings that *Korsmo* was an "omission case," not one based on an affirmative misrepresentation as is at issue here.[29]

The other two cases cited by Defendants — *In re Ford Motor Co. E-350 Products Liability Litigation (No. II)*, Civ. No. 03-4558, 2012 WL 379944 (D.N.J. Feb. 6, 2012), and *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2100, 2012 WL 865041 (S.D. Ill. Mar. 13, 2012) — also did not involve the name of a product that each class member was necessarily exposed to. *Ford* involved representations made in sales brochures

---

[24] *Id.*, at 29.

[25] Tr. 32:11-15.

[26] *Id.*, at 35:9-11.

[27] *Id.*, at 35:22-25.

[28] *Korsmo*, 2012 WL 1655969, at *1.

[29] *Id.*, at *5.

# REESE RICHMAN LLP

and other advertisements that many consumers would not have seen. *Ford*, 2012 WL 379944 at *11. And 11. And *Yaz* dealt with representations in two television advertisements that many consumers would not have seen. *Yaz*, 2012 WL 685041 at *2. None dealt with the name of the product itself that is prominently displayed on every product label as it as issue here.

In contrast to the irrelevant cases cited by Defendants, the cases cited by Plaintiffs above (and at the October 11th oral argument along with the packaging displayed as visual guide) answer Your Honor's questions as these cases all involve classes that were certified regarding facts analogous to the instant case — *i.e.*, representations on the labels of food products and other common household items that were necessarily viewed by all class members. *See e.g., In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, MDL No. 2199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (certifying class of pomegranate juice purchasers); *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067CAS(JCx), CV 11-5465CAS(JCx), 2012 WL 1616912, at *13 (C.D. Cal. May 7, 2012) (certifying class of hair product purchasers); *Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 532 (C.D. Cal. Nov 14, 2011) (certifying class of dietary supplement purchasers); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011) (certifying class of walnut purchasers); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 289 (C.D. Cal. 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 368 (N.D. Cal. 2010) (certifying class of soda purchasers).

And as stated before, the case of *Harvey v. CVS Pharmacy, Inc.*[30] is directly on point here. *CVS* involved an over-the-counter vitamin supplement sold under the brand name AirShield. The defendant argued that a class could not be certified. The court rejected this argument based on the fact that the very name of the product itself – AirShield – was at issue:

> Here, the uniformity amongst proposed class members is based on a very simple assertion by Plaintiff: "each and every unit of Product at issue here contained the same deceptive and misleading name – AirShield…."

Here, the same question is posed – whether the very name of the product – vitaminwater – is itself deceptive. As recognized in *CVS*, this poses a common question that is appropriate for class certification.

Finally it should be noted that in *Guido v. L'Oreal, USA, Inc.*, the court certified a class of shampoo purchasers based on the United States Supreme Court's decision in *Wal-mart* holding that "[b]ecause [the product] was packaged and sold uniformly across the nation…resolution of the common questions raised would resolve 'in one stroke' issues that are 'central to the validity' of each class member's claims."[31] And the court in *Guido* rejected one of the arguments that Defendants make here — that certification was not appropriate because consumers may have purchased the products at issue for a variety of reasons.[32] The same is true here: determination of the question whether or not the name "vitaminwater" is likely to mislead a reasonable consumer would resolve in "one stroke" the central issue of this case.

---

[30] Case No. 08-cv-5058 (C.D. Cal. Apr. 27, 2010).

[31] *Guido*, 2012 WL 1616912, at *8-9 (quoting *Wal-mart*, 131 S. Ct. at 2551).

[32] *See Id.*, at *6.

# REESE RICHMAN LLP

**6. Relevance And Reliability Of Defendants' Expert Reports**

Defendants' consumer surveys go to the very merits of this case: whether or not Defendants' marketing and advertising of its vitaminwater beverages are likely to mislead a reasonable consumer. This is an issue for determination in the merits phase of this case, not class certification. Indeed, Defendants have argued as much previously in this case when it successfully argued for bifurcation of discovery in this matter, thereby preventing Plaintiffs from obtaining discovery on this very issue.

Moreover, Defendants' consumer surveys underscore why this class should be certified. It is anticipated that Defendants will use its consumer surveys to argue to the trier of fact that no reasonable consumer could be misled by Defendants' advertising of vitaminwater. Because the reasonable consumer standard is an objective standard, if Defendants were to prevail on this issue through use of its consumer surveys, no consumer would have a claim (even the named plaintiffs who have testified under oath that they were deceived). Accordingly, Defendants' use of its consumer surveys in this manner would present a common defense, equally applicable to the claims of all consumers.

Defendants' defense of Dr. Ugone's report also underscores that reliance on such an opinion is a common defense to be determined at the merits stage by the trier of fact. Consideration of this report is not appropriate at the class certification stage. For example, whether or not the proper benchmark for premium price determination is SoBe Lifewater (as Defendants claim) or another benchmark such as soda (as Plaintiffs claim) is an issue on the merits to be weighed and evaluated by a trier of fact.

Finally, it needs be noted that even if Dr. Ugone's report were considered at the class certification stage (which it should not as it is a merits issue), it only applies to the New York class claims, where the showing of a premium (*i.e.* that the product cost more than other comparable products) is required. California, on the other hand, has a completely different measure of damages, which is measured by the purchase price of the product itself, without comparison to other products.

**7. Viability Of Ohio Claims**

The viability of the claims brought under Ohio law already has been explained by the Ohio counsel in the Ohio counsel's submission made on October 24, 2012, and Plaintiffs hereby incorporate them herein by reference.

# REESE RICHMAN LLP

**CONCLUSION**

For the reasons stated in Plaintiffs' Opening Brief in Support of Class Certification, Reply Brief, argument made at oral arguments, and as supported by every single food labeling case that has resulted in class certification as cited above, Plaintiffs respectfully request that this Court now grant Plaintiffs' Motion for Class Certification.

Respectfully submitted,

Michael R. Reese
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500

- and -

**SCOTT + SCOTT LLP**
Deborah Clark-Weintraub
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174-4099
Telephone: (212) 233-6444


**CENTER FOR SCIENCE
IN THE PUBLIC INTEREST**
Stephen Gardner
646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774


*Interim Co-Lead Counsel and
Counsel for the Proposed
California and New York Classes*

11